61 N.J. Super. 242 (1960)
160 A.2d 647
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE M. POHLABEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1960.
Decided May 6, 1960.
*243 Before Judges GOLDMANN, CONFORD and FREUND.
*244 Mr. Frederick Klaessig argued the cause for defendant-appellant.
Mr. Edward F. Hamill, Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. Lawrence A. Whipple, Hudson County Prosecutor, attorney).
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for plaintiff-respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
Defendant, Lawrence Pohlabel appeals from an order of the Superior Court, Law Division, Hudson County, denying a motion, prosecuted on his behalf by assigned counsel, pursuant to R.R. 3:7-15, to vacate an allegedly illegal and improper sentence. The sentence was imposed on April 6, 1951 by County Judge Ziegener, now deceased, following pleas of non vult to seven indictments charging forgery in violation of R.S. 2:132-1, now N.J.S. 2A:109-1. Defendant is presently confined in the New Jersey State Prison serving seven three to five year consecutive sentences, an aggregate term of 21 to 35 years.
Defendant does not deny his guilt and does not seek to withdraw his pleas of non vult. Neither does he claim the right to immediate release from prison, nor to a reduction in sentence because of its severity. He asserts only the right to have the sentences vacated so that he may be duly and properly resentenced. The principal ground of the motion below, which we have decided should have been granted, is that Judge Ziegener, in imposing sentence, misapprehended the contents of a pre-sentence investigation report prepared by the Hudson County Probation Department and was influenced by inaccurate and misleading information contained therein. The severity of the sentence is alluded to and relevantly before us only as indicating prejudice to the defendant. The Prosecutor of Hudson County also believes *245 the sentences in question were illegally imposed, depriving the defendant of due process of law, and he therefore joined in the motion. The Law Division judge permitted the Attorney General of New Jersey to oppose the motion as amicus curiae.
Since the sentencing in 1951, there have been several other proceedings and appeals involving alleged technical errors in the sentencing procedure. These have all been resolved against the defendant. See State v. Pohlabel, 40 N.J. Super. 416 (App. Div. 1956), where we affirmed the denial of an application on grounds not pertinent here.
There has been and is no court rule or statute in this State requiring that pre-sentence reports be shown to a defendant or his counsel. State v. Wingler, 25 N.J. 161, 178 (1957). See Knowlton and Gaulkin, "Should Presentence Reports be Shown to Defendants?," 79 N.J.L.J. 409, 421 (1956). In 1959, however, the defendant learned of certain portions of the report and became aware for the first time of the misleading nature thereof. It is urged that the inaccuracies counted heavily in the sentencing court's imposition of sentences aggregating a 21-35 year term, a seemingly excessive punishment for a non-violent crime against property, albeit within the statutory maximum. One of the grounds pressed on this appeal is that the defendant is entitled, under the New Jersey Constitution of 1947, Art. I, pars. 1, 10, and 12, to be provided with a copy of the whole report so that he may meet any other prejudicial errors included. This question is mooted by the reprinting of the report in its entirety in the Attorney General's answering brief.
At the time of sentencing Pohlabel was 26 years of age with a wife and two infant daughters. In March 1950 he had been employed to paint the interior of an apartment owned by a Mrs. Wilkes. While so doing, he obtained her checkbook and forged her signature to seven checks, totaling $1,467, naming an alias as payee and subsequently cashing the checks in that name. He was arrested in November *246 and eventually pleaded non vult to seven indictments, each charging forgery of a single check, a high misdemeanor. Pohlabel was also indicted for the theft of Mrs. Wilkes' wrist watch. Although he made a statement admitting guilt of this charge, defendant pleaded not guilty to it and the indictment still pends.
At the Law Division hearing on the present motion, Pohlabel testified as to his record prior to the sentencing in 1951. He had but one previous conviction for crime  grand larceny of an automobile in California in 1943 at the age of 18, for which he had received a one to ten year term. He had been confined to a minimum-security institution at Chino, California, but escaped to his home in Ohio. This was a "breach of trust" and did not involve "breaking out" or "using force, or anything of that nature, because you can go any time * * *." Defendant was free for several months but then voluntarily surrendered himself to authorities in Oklahoma in order to obtain free transport back to California. He was then imprisoned in San Quentin. Under the system in California as administered by an Adult Authority, escapees are not tried and convicted for a separate offense but are automatically given an indeterminate, one year to life term, to be served concurrently with the sentence the offender was originally serving. This was the procedure in Pohlabel's case, and because he was paroled in 1947, he "served no time whatsoever" for the escape.
In addition to the foregoing, Pohlabel had served 60 days in a county jail in California in 1943. This occurred when he was a member of the State Guard and disobeyed two orders. He was court-martialed for violation of two articles of war and placed in the county jail because there was no guardhouse.
The probation report which had been submitted to Judge Ziegener before sentencing occupies 14 printed pages in the Attorney General's brief. It contains the defendant's personal history, including his early life, education, occupational history, health and habits, and family relationships; a statement *247 of the legal proceedings prior to sentencing; a statement of a police officer detailing the offense and apprehension; a statement from Mrs. Wilkes and from an officer of the bank where the checks had been cashed; and a report of an interview with the defendant (wherein he is described as being "a master of deception" with "a contemptuous attitude for law enforcement agencies"). Under a section entitled "Summary" appears "Extensive police record. No probation record." Elsewhere is a recital that Pohlabel "spent the greater part of his life in penal institutions as a juvenile and adult, and otherwise roamed the country."
Under "Additional Information" there is a summary of information furnished by Mr. Victor Dragon of the Division of Parole who was familiar with defendant's record in this State, pursuant to an agreement reached with the California authorities for a transfer of parole supervision. It is stated that Pohlabel was arrested and indicted twice in 1949, for larceny of an automobile and for embezzlement, but that both charges were nolle prossed. The report states that, according to Mr. Dragon, the California authorities were
"no longer interested in extraditing this defendant for violation of his parole as they feel his present involvement will result in sufficient punishment to compensate for the time he owes them."
Then follows a charge that defendant threatened harm to parole officers on several occasions and that on another he made a threatening and insulting remark to the judge of a Jersey City municipal court, "which resulted in defendant's being found in contempt and penalized by penitentiary sentence, which was later remitted by reason of pending Grand Jury action." Mr. Dragon then felt "compelled in this case to depart from the custom of offering no recommendation to the Court" and urged that the maximum punishment be imposed.
On a separate sheet the pre-sentence report summarized the contents of a Federal Bureau of Investigation report *248 and transcript of defendant's contacts with courts, institutions, and social agencies. This consisted of 14 different entries, prefaced by the remark that the list constituted Pohlabel's "criminal record" since he attained the age of 18. A reader of ordinary diligence might well receive the impression that many of the entries in the list refer to the commission of separate crimes. For example, the first entry mentions that defendant spent 60 days in the county jail, permitting the inference that he was convicted by a court of law instead of court-martialed. The following entry was particularly misleading and conceded by the State to be "a mistake":

"12/31/44 San Quentin Calif. Ret. as escapee from Chino Prison  Add'l. committment of Life Imprisonment Rel. on parole 11/14/47"
The rules of court provided for but did not require the use of a pre-sentence report on April 6, 1951. It became mandatory on January 1, 1953 by R.R. 3:7-10(b). The court below found as a fact, and we agree, that the report "was used by Judge Ziegener on the original sentence day." But the rule as then framed did require that the sentencing judge enter in the report, before its submission to the custodial institution, "a brief statement of the basic reasons for the sentence so imposed by him." This mandate was not complied with, and we therefore have nothing but the sentencing judge's oral remarks to indicate his state of mind and the effect of his reading the pre-sentence report. In pertinent part, Judge Ziegener and the defendant said the following when the latter appeared with counsel for sentencing:
"THE COURT: I shall not refer to the extensive record of yours covering many arrests as a juvenile.
THE DEFENDANT: Yes, your Honor.
THE COURT: And many arrests for a series of crimes since 1943. You have lived a life of crime. The court has a full report on all of your previous activities of a criminal nature.
*249 THE DEFENDANT: I know that, your Honor, but even this time I didn't want to do this. I don't know what made me do it. All I knew was that my wife and children were suffering. I didn't spend the money  I didn't go out to have a good time drinking or gambling. I spent it for her and my children so she could have the baby properly.
THE COURT: You have also in your criminal activities made escape from incarceration, haven't you?
THE DEFENDANT: Yes, sir, your Honor.
THE COURT: On several occasions.
THE DEFENDANT: On one occasion, your Honor, in California. I was just a juvenile and I was homesick. I was away from my people and didn't know no one out there." (Emphasis supplied)
The sentencing judge was of the impression that Pohlabel had escaped from incarceration "on several occasions." The defendant hastened to correct the judge's misunderstanding as to the number of escapes and we will not assume that the judge failed to revise his thinking accordingly. While the defendant might not therefore have been prejudiced in this particular, the fact that the error was made in the first place bespeaks a misapprehension of the contents of the probation report.
The Hudson County Prosecutor argues that, contrary to what had been the apparent belief of the sentencing judge, it was fully developed at the hearing below that this defendant had but one previous conviction and had not "lived a life of crime." The Deputy Attorney General who argued the case against the defendant at the hearing and on this appeal conceded that he could not characterize defendant's life as a "life of crime." The stress of the prosecutor's argument is not on the inaccuracies of the report but on the probability that the sentencing judge drew assumptions from the report or from some other sources that were materially untrue. Reliance is had upon Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), where the Supreme Court not only remanded for resentencing but set aside the conviction of an uncounseled defendant *250 because of the trial judge's mistaken assumptions concerning his criminal record.
The defendant makes a number of additional points. He refers to the false statement in the report that he had been given a sentence of life imprisonment in California as a basis for the conclusion that Judge Ziegener did not know that the actual sentence for the escape was one year to life. He denies having been convicted of contempt of court in Jersey City as stated in the report, and no record has been submitted to us to impeach that denial. He argues the sentencing court was of the erroneous belief that he "owed" California a life sentence and that the California authorities were no longer interested in his case because they were looking to our courts to punish him sufficiently. In fact, however, California has placed a detainer with the State Prison and has advised Pohlabel that his case as a parole violator will be reviewed 60 days before his release.
Finally, the defendant observes that the statement by the court that he had lived a life of crime was immediately preceded by a reference to his "many arrests" since 1943. It is urged that the court obviously, but in derogation of the presumption of innocence, considered the arrests as convictions or as proof of crimes. Cf. State v. Nagy, 27 N.J. Super. 1, 5 (App. Div. 1953). In view of our disposition of this case, we need not decide what weight, if any at all, should be given by a sentencing judge, in estimating the appropriateness of a particular degree of punishment, to an arrest or series of arrests not followed by conviction. It has been held that evidence of prior arrests offered by the State in aggravation of punishment is "incompetent and immaterial." See People v. Riley, 376 Ill. 364, 33 N.E.2d 872, 134 A.L.R. 1261 (Sup. Ct. 1941), certiorari denied Riley v. State of Illinois, 313 U.S. 586, 61 S.Ct. 1118, 85 L.Ed. 1542. But in deciding whether the defendant was prejudiced by the receipt of incompetent evidence in an inquiry as to aggravation or mitigation, it is ordinarily presumed that the court disregarded such evidence. 15 Am. *251 Jur., Criminal Law, § 519, p. 168 (1938). It suffices to say that here that presumption could not be indulged, for the remarks of the court itself indicate that the arrests were not disregarded; indeed, there was no other stated basis for the conclusion that the defendant "lived a life of crime."
The Attorney General has offered a number of arguments on this appeal which do not impress us. It is claimed that Pohlabel has already received at the hearing below the relief he now seeks. The Law Division judge, however, ruled merely that the sentence was not an "illegal" one or imposed inconsistently with due process of law, and that as a result he would not vacate it. There was no actual resentencing in the light of the newly-developed facts. Secondly, it is argued that any relief is limited to the exercise of executive clemency. But it is the function and the positive duty of the court to correct an "illegal sentence," and the power is exercisable "at any time." R.R. 3:7-13. Thirdly, it is said to be fundamental to our jurisprudence that the sentencing court has wide discretion and exclusive jurisdiction to fix the quantum of punishment so long as the statutory limits are observed. This is so but in no way detracts from the defendant's right to be relieved where he can show that the sentencing judge acted under material misapprehensions of fact as to the defendant's criminal record, and that prejudice probably resulted. Finally, Townsend v. Burke, supra, is argued to be distinguishable since Pohlabel was represented by counsel at sentencing. Counsel was not, however, permitted to inspect the pre-sentence report and his assistance could not have cured any prejudicial reliance thereupon.
It would be less than candid for us to suggest that we are irresistibly drawn to the conclusion that this defendant has been denied due process of law. Notwithstanding but one conviction, he appears to be constitutionally unable to refrain from conflict with the rules of society and his record is not of a nature to inspire confidence in his future. No one can say with certainty that Judge Ziegener, properly *252 and accurately informed, would not have imposed as severe a sentence as he did. But there exists a strong probability that the quantum of his sentence was influenced by materially untrue assumptions and statements concerning his criminal record. There is no proof that he had been convicted of contempt of court, he had not spent 60 days in jail as a result of a conviction for crime, had not received a life sentence in California, and the California authorities have not abdicated responsibility in favor of our courts. Mr. Dragon's recommendation that he be given the maximum sentence was of doubtful propriety (see 15 Am. Jur., Criminal Law, § 519, p. 168, text at n. 4), and, other than the fact that defendant was arrested many times, there is nothing to substantiate the statement in the report that he had spent the greater part of his life in penal institutions. Finally, we have a more or less positive manifestation that the sentencing judge, in originally believing the defendant had been guilty of escape on several occasions, had misapprehended the nature of the entries in the probation report, which, as already mentioned, appear visually to be different convictions and escapes.
It has been said: "The responsibility of the court does not end with the conviction and sentences of criminal offenders, R.R. 1:5-1(c)." State v. Culver, 23 N.J. 495, 511 (1957). We are of the view that sufficient doubt has been cast upon the legality of the imposition of sentence in the present case as to require the vacation thereof and appropriate resentencing in the light of a new pre-sentence investigation report.
Reversed and remanded.