STATE OF NEW JÉRSEY, PLAINTIFF-RESPONDENT, v.
HENRY KUNZ, DEFENDANT-APPELLANT.

Argued September 24, 1969—Decided December 16, 1969.

*Mr. David W. Hanis* argued the cause for appellant.

*Mr. Harold N. Springstead,* Assistant Procesutor, argued
the cause for respondent (*Mr. Guy W. Calissi,* Bergen County
Prosecutor, attorney).

The opinion of the court was delivered by

JACOBS, J. The defendant was convicted of having purchased a stolen automobile in violation of *N. J. S. A.* 2A:139–1. *Cf. State v. Bott*, 53 *N. J.* 391 (1969). At the time of sentencing, defense counsel asked that he be given an opportunity to review the presentence report which the trial judge had theretofore examined. The request was denied and the defendant was sentenced to serve a term of "not less than one year nor more than two years in New Jersey State Prison." The Appellate Division rejected the defendant's appeal in an unreported *per curiam* which stated that "[t]here was no right on the part of the defendant or counsel to see the presentence report for aid in argument on mitigation of sentence." We granted certification. 53 *N. J.* 273 (1969).

The parties have filed an agreed statement in lieu of trial transcript. It sets forth that the State's case consisted of testimony that a Coupe de Ville Cadillac owned by Mr. Degenshein of New York had been stolen; that the title papers covering it had been transferred to the defendant from a Vermont registration; that the Certificate of Ownership issued by the State of New Jersey certified that the person named therein was the owner of the vehicle; that there was nothing irregular on the face of the registration and title certificate; that the serial number of the automobile had been altered; and that when the defendant was questioned by a State Trooper he said that he had paid $4,600 in cash for the automobile to a man who identified himself as Harvey Bruner of Vermont and who represented that he was in the business of repossessing automobiles for finance companies and banks and reselling them.

The defendant testified that he purchased the automobile for $4,600 in cash which he had borrowed from his mother and sister; that he considered that that was a fair and reasonable price for the automobile which had some recorded mileage and minor defects such as a ripped seat, an inoperative air conditioner, etc.; that he is a homeowner, a family

man and the father of two small children; that he has been in business with his partner Mr. Grimm at the same location for more than ten years and that "he had absolutely no criminal record of any kind and had never been in any kind of trouble at any time during his life." Mr. Grimm testified in support with respect to their business relationship and "that the defendant had an excellent reputation in the business community and had never been in any trouble of any kind to his knowledge." The defendant's sister also testified, saying that the defendant "had an excellent reputation in his residential community, that he was a family man with two small children, owned his own home and had never been in any kind of trouble in his lifetime."

The agreed statement further sets forth that although the reports of investigators and portions of the prosecutor's file contained "suspicions or speculations" that the defendant knew more about the stolen automobile than he was willing to say, no supporting proof or evidence of any kind was ever brought out during the trial proceedings against the defendant. The jury found the defendant guilty and in the light of that finding it must be assumed that when the defendant purchased the automobile he knew it was stolen. But the finding as such did not implicate the defendant beyond being a knowing purchaser of a stolen automobile and when his counsel appeared at sentencing time, to plead for probation or other minimal sentence, he appropriately stressed his understanding that the defendant was an established business man of good reputation with no prior or other involvement with the law. The trial judge, without any comment as to the contents of the presentence report or as to any suggested additional involvement on the defendant's part, imposed the State Prison term.

In compliance with R. R. 3:7–10(b) (see R. 3:21–2) the trial judge noted his reason for imposition of the State Prison sentence as follows: "Although this is the defendant's first arrest, incarceration is deemed necessary." After the Appellate Division had sustained the sentence, the defendant's

counsel moved before the trial judge for its reduction, stressing that "this defendant has had throughout his entire life an exemplary and clear record, never been arrested, never had any involvement with the authorities of any kind whatever." Still without disclosure of the contents of the presentence report, the trial judge stated that he had restudied the report and did not feel that there should be "any change in the sentence."

In his petition for certification, defense counsel reiterated his understanding as to the defendant's good background and reputation and his view as to the unjust nature of the sentence. Before oral argument we examined the presentence report and noted particularly that it charged that a stolen vehicle ring, specializing in Cadillacs, was being operated by a named individual whose "contact in New Jersey" was the defendant and that the defendant had been involved with several identified purchases of stolen automobiles in New Jersey. When at oral argument this was called to the attention of defense counsel, he branded the charge as wholly unfounded and reasserted his position that the defendant's only transgression and its full extent was the single offense which was the subject of the trial.

The appeal to the Appellate Division as well as the petition for certification to this Court were addressed solely to the sentence and both attacked the trial court's action in refusing to disclose the contents of the presentence report and in relying on crucial extra-trial charges therein which the defendant alleges were groundless. He contends that his sentencing in such manner violated his rights under the due process clause of the fourteenth amendment. *See Townsend v. Burke,* 334 *U. S.* 736, 68 *S. Ct.* 1252, 92 *L. Ed.* 1690 (1948); *but cf. Williams v. New York,* 337 *U. S.* 241, 69 *S. Ct.* 1079, 93 *L. Ed.* 1337 (1949); *see also Baker v. United States,* 388 *F. 2d* 931 (4 *Cir.* 1968); *Verdugo v. United States,* 402 *F. 2d* 599, 613 (9 *Cir.* 1948) (concurring opinion). He further contends that, wholly apart from any constitutional compulsion, he should, as a

matter of rudimentary fairness, have been permitted to examine the presentence report and have been afforded an opportunity to meet the extra-trial charges therein which were presumably responsible for the severity of his sentence. *See American Bar Association Project On Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures* 200–28 (Approved Draft 1968); *President's Commission On Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society* 144–45 (1967); *President's Commission On Law Enforcement and Administration of Justice, Task Force Report: The Courts* 20 (1967); Lehrich, "The Use and Disclosure of Presentence Reports in The United States," 47 *F. R. D.* 225 (1969); Higgins, "Confidentiality of Presentence Reports," 28 *Albany L. Rev.* 12 (1964); Wyzanski, "A Trial Judge's Freedom and Responsibility," 65 *Harv. L. Rev.* 1281, 1291–92 (1952); Notes, 81 *Harv. L. Rev.* 821, 835–43 (1968); 58 *Colum. L. Rev.* 702 (1958).

Presentence reports were originally designed to benefit the individual offenders and lessen the severity of the penal laws. They were incident to the penological approach which sought, and still seeks, to tailor the sentence to the background and present circumstances of the offender along with the nature of his offense. Their worth, so long as they are accurate, is beyond question; if inaccurate their harm may be incalculable. Those who have expressed support for an open policy of disclosure of presentence reports to defendants have urged that, even apart from the overriding considerations of fairness and justness, it will serve to improve and strengthen probation reports by promoting greater accuracy on the part of the officials as well as the persons who supply information to them. Those who have expressed opposition to such a policy have urged primarily that it will dry up necessary sources of information. They say that without a promise of confidentiality, the defendant's employer, his family, friends and others, will generally remain silent as to his habits, associations, and other personal data. How-

ever, they furnish little in the way of solid support for their apprehensions which apparently have not materialized in jurisdictions already operating under local policies of disclosure. *See* Winter, J., concurring in *Baker v. United States, supra,* 388 *F. 2d* at 935:

Legal literature is replete with a debate over the pros and cons of disclosure and non-disclosure, but we need look no further than the District of Maryland in determining how district judges should be guided. In the District of Maryland, disclosure of presentence reports, in accordance with my views, has been the practice for over ten years. The experience of Maryland belies the fears that, as general propositions, sources of confidential information dry up, probation officers are deprived of trustworthy and logical informants, and the object of the report is defeated, if the contents of reports are disclosed.

*See also Thomsen,* "Confidentiality of the Presentence Report: A Middle Position," 28 *Fed. Prob.* 8 (1964) ; Higgins, "In Response to Roche," 29 *Albany L. Rev.* 225, 229 (1965) ; *cf.* Roche, "The Position for Confidentiality of the Presentence Investigation Report," 29 *Albany L. Rev.* 206, 222– 24 (1965).

The local practice of disclosure referred to in Judge Winter's opinion finds counterparts in quite a few of our sister states as well as in foreign jurisdictions such as Canada and Great Britain. *See* Criminal Justice Act of 1967, *c.* 80, *sec.* 57; Criminal Justice Act of 1948, 11 & 12 Geo. 6, *c.* 58, *sec.* 43; *Jackson, The Machinery of Justice in England* 248–50 (*5th ed.* 1967) ; Note, "Right of Criminal Offender to Challenge Report Used in Determining Sentence," 49 *Colum. L. Rev.* 567, 567–72 (1949). The California Penal Code (§ 1203) (Deering's 1969 *Supp.*) specifically provides that the presentence report must be made available to the prosecuting and defense attorneys as well as the court. *See also Ala. Code* tit. 42, § 23 (1959) ; *Minn. Stat. Ann.* § 609. 115(4) (1965). The Virginia Code (§ 53–278.1) (1967) specifically provides that in certain cases the probation officer shall present his report in open court in the presence of the defendant who may cross-examine and may present materials on his own behalf. *Cf. Ariz. Rev. Stat. Ann., R. Crim. P.*

336 (1956); *Idaho Code Ann.* §§ 19–2515, 19–2516 (*Supp.* 1965); *N. D. Cent. Code* §§ 29–26 – 17, 18, 19 (1965); *Okla. Stat. Ann.* tit. 22, § 973 (1961); *Ore. Rev. Stat.* § 137.080 – .110 (*Supp.* 1965); *Kuhl v. District Court*, 139 *Mont.* 536, 366 *P. 2d* 347 (1961); *Spencer v. State*, 275 *P. 2d* 329 (*Okla. Crim. Ct. App.* 1954). In some states where the legislative codes and the court rules were entirely silent on the subject, the need for disclosure was recognized by court decisions. *See State v. Harmon*, 147 *Conn.* 125, 157 *A. 2d* 594, 596 (1960); *cf. Driver v. State*, 201 *Md.* 25, 92 *A. 2d* 570, 573 (1952); *State v. Pope*, 257 *N. C.* 326, 126 *S. E. 2d* 126 (1962).

The practice in the federal courts, as well as in many of the states, has been to leave the choice of disclosure or nondisclosure to the discretion of the trial judge. *See Fed. R. Crim. P.* 32 (c)(2) (Notes of Advisory Committee); 8A *J. Moore, Federal Practice*, 32.01[3], 32.03[4] (1969). In *United States ex rel. Gerchman v. Maroney*, 355 *F. 2d* 302 (3 *Cir.* 1966), the court pointed to the "increasing uneasiness" regarding the federal rule's failure to adopt the practice of disclosure as a matter of right so that the defendant might have fair opportunity "to show factual errors in the report." 355 *F. 2d* at 310 n. 10. And in *United States v. Fischer*, 381 *F. 2d* 509 (2 *Cir.* 1967), the court noted that the federal discretionary rule should not be exercised "conservatively and in a niggardly fashion" but, on the contrary, "the administration of justice would be improved by a liberal and generous use of the power to disclose." 381 *F. 2d* at 512. *See Baker v. United States, supra*, 388 *F. 2d* at 935; *cf. Smith v. United States*, 223 *F. 2d* 750, 754 (5 *Cir.* 1955); *Stephan v. United States*, 133 *F. 2d* 87, 100 (6 *Cir.*), *cert. denied*, 318 *U. S.* 781, 63 *S. Ct.* 858, 87 *L. Ed.* 1148 (1943); *see also* Federal District Judge Wyzanski's comment in 65 *Harv. L. Rev., supra* at 1291:

Despite the latitude permitted by the Due Process Clause, it seems to me that a judge in considering his sentence, just as in trying a defendant, should never take into account any evidence, report or

other fact which is not brought to the attention of defendant's counsel with opportunity to rebut it. *Audi alteram partem,* if it is not a universal principle of democratic justice, is at any rate sufficiently well founded not to be departed from by a trial judge when he is performing his most important function.

The academic world has been widely critical of the federal rule's omission of mandatory disclosure. In 1954, Tentative Draft No. 2 of the American Law Institute's Model Penal Code proposed that before imposing sentence, the court advise "the defendant or his counsel of the factual contents and the conclusions of any pre-sentence investigation or psychiatric examination and afford fair opportunity, if the defendant so requests, to controvert them." There was a proviso that "the sources of confidential information need not, however, be disclosed." § 7.07(5). The comment accompanying the proposal noted that "less disclosure than this hardly comports with elementary fairness" (at 55). In 1962, the Proposed Official Draft of the Model Penal Code reaffirmed the proposal without alteration. In 1967, the President's Commission on Law Enforcement and Administration of Justice recommended that "[i]n the absence of compelling reasons for nondisclosure of special information, the defendant and his counsel should be permitted to examine the entire presentence report." *President's Commission On Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, supra* at 145; *see President's Commission On Law Enforcement and Administration of Justice, Task Force Report: The Courts, supra* at 20; Guzman, "Defendant's Access to Presentence Reports in Federal Criminal Courts," 52 *Iowa L. Rev.* 161, 181–85 (1966); *Rubin, The Law of Criminal Correction* at 87–101 (1963); *Tappan, Crime, Justice and Correction* at 553–59 (1960).

In 1967, the American Bar Association's Advisory Committee on Sentencing and Review, headed by Federal Circuit Judge Sobeloff, submitted a comprehensive report which dealt in significant part with the question of whether there

should be mandatory disclosure of presentence reports. *See Sentencing Alternatives and Procedures, supra.* The report discussed the three basic arguments which had been advanced in opposition to disclosure. *Id.* at 216. With respect to the feared drying up of sources of information, it concluded that there was little factual basis for the fear, *id.* at 219, and it referred to the supportive experiences of members of the Committee who had lived under systems where disclosure was routine. With respect to the suggestions that disclosure would involve undue delay, the Committee noted that in most instances an appropriate presentence conference (*see* § 4.5 (*b*), at 226) would avoid such delay and that, in any event, justice required that a properly conducted sentencing proceeding "be more protracted rather than less because of non-disclosure of the report." *Id.* at 222. Finally, with respect to the suggestion that diagnostic matters should be withheld when their disclosure might harm the defendant's chances of rehabilitation, the report noted that this could not be accepted "as a reason for denying disclosure of information not relevant to the point." *Id.* at 223.

The Committee, while pointing out that there may well be constitutional grounds for requiring disclosure, expressed the thought that the matter should not be exclusively controlled by constitutional considerations. It noted that it was persuaded "as a matter of policy that disclosure of the report ought to be required because such a practice will increase the fairness of the system, because it will increase the appearance of fairness, and because it will assure a greater degree of accuracy in the sentencing determination." *Id.* at 224. The specific recommendation which was made by the Committee and which was approved in 1968 by the House of Delegates of the American Bar Association was formulated, in pertinent part, in the following terms:

(a) Fundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interests and which has not otherwise been disclosed in open court

should be called to the attention of the defendant, his attorney, and others who are acting on his behalf.

(b) This principle should be implemented by requiring that the sentencing court permit the defendant's attorney, or the defendant himself if he has no attorney, to inspect the report. The prosecution should also be shown the report if it is shown to the defense. In extraordinary cases, the court should be permitted to except from disclosure parts of the report which are not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, or sources of information which has been obtained on a promise of confidentiality. * * * *Id.* at 213–14.

The significant movement towards mandatory disclosure is undoubtedly being influenced not only by the persuasive academic writings but also by the recent Supreme Court decisions which have greatly expanded and strengthened the individual rights of the accused. Thus he is entitled to counsel throughout all critical stages of the proceedings (*Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed.* 2d 799 (1963)) including the sentencing. *Mempa v. Rhay,* 389 *U. S.* 128, 88 *S. Ct.* 254, 19 *L. Ed.* 2d 336 (1967). He may be entitled to considerable evidential disclosure from the prosecution (*see Brady v. Maryland,* 373 *U. S.* 83, 83 *S. Ct.* 1194, 10 *L. Ed.* 2d 215 (1963); *Fed. R. Crim. P.* 16; 8 *J. Moore, Federal Practice, supra, Ch.* 16 (1968); Symposium, "Discovery in Federal Criminal Cases," 33 *F. R. D.* 47 (1963)) and is of course entitled to be confronted by the witnesses against him. *Pointer v. Texas,* 380 *U. S.* 400, 85 *S. Ct.* 1065, 13 *L. Ed.* 2d 923 (1965). He may not, after conviction on one charge, be sentenced on the basis of another charge on which he was not heard (*Specht v. Patterson,* 386 *U. S.* 605, 87 *S. Ct.* 1209, 18 *L. Ed.* 2d 326 (1967)) and, in general, he may not be subjected to "critically important" determinations without meaningful opportunity to be heard and meaningful representation by counsel. *Cf. Kent v. United States,* 383 *U. S.* 541, 86 *S. Ct.* 1045, 16 *L. Ed.* 2d 84 (1966) where the Court, in holding that an accused juvenile was entitled (before the entry of a waiver by the Juvenile Court in favor of the District Court) to a hearing including access by his counsel to the pertinent social records

and probation reports, pointed out that the right to representation was not a mere formality but was "of the essence of justice." 383 *U. S.* at 561, 86 *S. Ct.* at 1057, 16 *L. Ed. 2d* at 97. *See In re Gault,* 387 *U. S.* 1, 34, 87 *S. Ct.* 1428, 18 *L. Ed. 2d* 527, 550–51 (1967); Note, *supra,* 81 *Harv. L. Rev.* at 828–829.

It is indeed difficult to see how there can be meaningful representation by counsel at sentencing time when there is no disclosure to him of the presentence materials on which the sentence is being based. And surely without such materials he is in no fair position to determine whether an appeal should be taken from the sentence or how to prosecute it if it is taken. Although a right of appellate review of the sentence is not yet generally recognized in the federal courts (*but cf. United States v. Wiley,* 278 *F. 2d* 500 (*7 Cir.* 1960)), the academic writings and many state decisions strongly support it. *See American Bar Association Project On Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences* at 13–20 (Tent. Draft 1967); Mueller, "Penology on Appeal: Appellate Review of Legal but Excessive Sentences," 15 *Vand. L. Rev.* 671 (1962). Where there is such right of review the crying need for disclosure is even more evident than elsewhere. *See* Rubin, "Sentences Must Be Rationally Explained," 42 *F. R. D.* 203, 217 (1968):

> Certainly if the defendant has the right to have an appellate court pass on the validity of his sentence and, in so doing, consider the presentence investigation on which the sentence was based, how can this process operate intelligently unless the defendant knows enough about the report to challenge it where necessary and unless the court has the report in front of it? Certainly if the defendant can raise issues about the report, he has a right to examine it to see whether it is legally adequate in his case. And it seems evident that if the presentence investigation is part of the record on the sentence, then it should be made a part of the record in the appellate court on any review of the sentence.

We come now to the consideration of our own New Jersey history in the field of presentence reports. The rules, as they

originally implemented our new judicial system in 1948, contained a provision for a presentence report "unless the court otherwise directs." Rule 2:7–10. In 1953 the presentence report became mandatory. *R. R.* 3:7–10 (b) ; *see State v. Pohlabel,* 61 *N. J. Super.* 242, 248 (*App. Div.* 1960). The requirement for it was described as "a mandate of the highest order." *State v. Culver,* 40 *N. J. Super.* 427, 431 (*App. Div.* 1956), *aff'd,* 23 *N. J.* 495, 499–500 (1957). In *State v. Alvarado,* 51 *N. J.* 375 (1968) we recently noted that the requirement for presentence report applies to all criminal proceedings including not only those in the superior and county courts but also those in the municipal courts on waivers under *N. J. S. A.* 2A:8–22.

The rules did not deal specifically with the matter of disclosure. In practice there was some discretionary partial disclosure but no right to disclosure was recognized. In 1956 Professor Knowlton of Rutgers Law School presented a paper which strongly advocated mandatory disclosure and Judge Gaulkin, then a member of the Essex County Court, submitted a paper in opposition; both of the papers were reprinted in the New Jersey Law Journal. Knowlton, "Should Presentence Reports Be Shown to Defendants?," 79 *N. J. L. J.* 409 (1956) ; Gaulkin, "Should Presentence Reports Be Shown to Defendants?," 79 *N. J. L. J.* 421 (1956). In ensuing years, committees of this Court have dealt fully with the subject and have submitted pertinent recommendations. In 1963 the Committee on Criminal Procedure recommended that, upon request, the court should disclose "a summary of the material contained in the report and afford an opportunity to the defendant or his counsel to comment thereon." There was a proviso that "[t]he sources of confidential information need not, however, be disclosed." *Proceedings of the 1963 Judicial Conference, Report of the New Jersey Supreme Court's Committee on Criminal Procedure* (1963). In 1965 the Subcommittee on Rules of the Committee on Criminal Procedure recommended that "a copy of the presentence report shall be furnished to the defendant or his attorney except

that the court in its discretion may direct that certain portions of the same be deleted from said copy." *Proceedings of the 1965 Judicial Conference, Report of the New Jersey Supreme Court's Subcommittee on Rules of the Committee on Criminal Procedure* (1965). A recommendation to the same effect was contained in the 1966 Proposed Revision of the Rules Governing the Courts of the State of New Jersey; however, the Revision, as it was ultimately adopted in 1969, did not embody the recommendation but directed that the presentence report "shall be confidential, unless otherwise provided by rule or court order." *R.* 3:21-2.

During the period in which our court appointed committees, along with others, were fairly seeking to broaden the defendant's rights in connection with presentence disclosure, our State court decisions were pointedly broadening the individual rights of the accused in divers aspects. Thus his right to counsel at sentencing as well as earlier stages was firmly recognized. *State v. Jenkins*, 32 *N. J.* 109 (1960) ; *cf. State v. Kramer*, 98 *N. J. Super.* 539 (*Law Div.* 1967). His right to wide discovery, even wider than that allowed in the federal sphere, was similarly recognized. *State v. Cook*, 43 *N. J.* 560 (1965) ; *State v. Johnson*, 28 *N. J.* 133 (1958) ; *R.* 3:13-3. His right, after conviction, not to be sentenced as a second offender without first being afforded proper notice and opportunity to be heard as to whether he was such an offender was upheld in *State v. Booker*, 88 *N. J. Super.* 510, 515 (*App. Div.* 1965) ; *cf. State v. Laird*, 25 *N. J.* 298 (1957). And his right, after conviction, not to be sentenced under the Sex Offender Act (*N. J. S. A.* 2A:164-3 *et seq.*) without disclosure of the Diagnostic Center's report bringing him within the Act, along with opportunity to be heard thereon, was upheld in *State v. Wingler*, 25 *N. J.* 161 (1957). In *Wingler* we noted that the Act did not expressly call for disclosure or hearing prior to sentencing and we assumed, for purposes of our decision, that it was not constitutionally compelled ; nonetheless we were convinced that the interests of justice would be advanced by a requirement for predis-

closure of the report and fair opportunity for hearing thereon and to that end we ordered the issuance of an appropriate administrative directive. 25 *N. J.* at 179; *see R.* 3:21-3.

Perhaps even more significant than any of the foregoing has been the recent experience with appellate review of sentences. The defendant's right to appeal from his sentence as manifestly excessive has become firmly established in our State only within the past decade. *See State v. Johnson,* 67 *N. J. Super.* 414 (*App. Div.* 1961); *see also State v. Laws,* 51 *N. J.* 494 (1968); *State v. Bess,* 53 *N. J.* 10 (1968); *State v. Hicks,* 54 *N. J.* 390 (1969). In *Bess* the defendant was convicted of murder in the second degree and was sentenced to ten to fifteen years in State Prison. He appealed from his conviction and sentence. We found no error in the finding of guilt but, after examining the trial record and the presentence report, concluded that his sentence was clearly excessive. It was reduced to no more than five nor less than two years. 53 *N. J.* at 19. Similarly, in *Hicks* we concluded, after examining the trial record and the presentence report, that the defendant's sentence of twenty to twenty-five years was too severe and reduced it to not less than six nor more than eight years. 54 *N. J.* at 392.

The point made by Rubin, *supra,* 42 *F. R. D.* at 217 to the effect that appellate review of sentencing cannot operate intelligently unless the defendant is told enough about the contents of the presentence report to challenge any relevant errors, would appear to be beyond dispute. And as some of our own cases vividly illustrate, without such disclosure there can be no assurance, either at the original sentencing level or at the appellate level, that the report is adequate and accurate. *See State v. Pohlabel, supra,* 61 *N. J. Super.* 242; *State v. Barbato,* 89 *N. J. Super.* 400 (*Union Cty. Ct.* 1965); *State v. Leckis,* 79 *N. J. Super.* 479 (*App. Div.* 1963); *cf. United States ex rel. Jackson v. Myers,* 374 *F. 2d* 707 (3 *Cir.* 1967); *State v. Killian,* 91 *Ariz.* 140, 370 *P. 2d* 287 (1962).

In *Pohlabel* the defendant forged seven checks totalling $1,467. He pleaded non vult in 1951 to the indictments returned against him and received seven three to five year consecutive terms, totalling twenty-one to thirty-five years. In 1959 the defendant learned of portions of the presentence report and that it contained inaccurate and misleading information. He applied for vacation of his sentence and for resentencing. Though the prosecutor joined in the application the Law Division denied it. The Appellate Division reversed in an opinion which detailed the inaccuracies in the probation report and the misimpressions from it which undoubtedly caused the grossly excessive punishment. 61 *N. J. Super.* at 252. If there had been predisclosure of the report and meaningful representation at sentencing time the defendant might well have received concurrent rather than consecutive terms and might have been justly spared the additional years of confinement which had already been served. *See Sentencing Alternatives and Procedures, supra* at 218.

In *Barbato* the defendant petitioned for post-conviction relief from a five to seven year sentence which had been imposed without allocution. The sentence was improper (*State v. Laird,* 85 *N. J. Super.* 170 (*App. Div.* 1964)) but since it had been fully served the county court thought that the petition should be denied. However, in the course of its opinion the court discussed the severity of the sentence and expressed the view that the defendant had been the "victim of an injustice resulting from a misconception on the part of the sentencing judge." 89 *N. J. Super.* at 406. Here disclosure and meaningful representation would have avoided unfairness and error. In *Leckis* a plea of guilty was accepted from an unrepresented defendant who was sentenced to State Prison for a term of six and one-half to seven years. In later *habeas corpus* proceedings the Appellate Division examined the presentence report and found it wholly inadequate. It referred to strong indications in the record that if the entire background of the occurrence in question had been disclosed, the degree of the defendant's offense "might well have

been tempered and his punishment proportionately lightened." 79 *N. J. Super.* at 486. To effectuate justice, the Appellate Division reversed and remanded the entire matter for appropriate proceedings; needless to say, here again the fair course would have entailed disclosure and representation at the time of sentencing.

The situation in the *Kunz* case at hand furnishes another apt illustration of the need for disclosure and meaningful representation at sentencing time as well as on appeal. The defendant was charged with having purchased the Degenshein Cadillac with knowledge that it was stolen. He denied knowledge but the jury found against him. When the probation officer spoke to him before sentencing the defendant persisted in his denial. At sentencing time the defendant had not seen the presentence report and his counsel, having specifically been denied opportunity to examine it, made his argument to the trial judge on the basis of the trial proceedings which contained nothing to indicate any involvement beyond the single purchase of the Degenshein Cadillac. But the probation report which the trial judge had before him stated flatly that there was other involvement and that the defendant was the New Jersey "contact" for a stolen vehicle ring and had been involved with several other identified purchases of stolen vehicles. This charge, much more sweeping than the one on which the defendant was tried, was never preferred against him and is now vigorously denied by him. As a matter of fundamental fairness he is entitled to be heard on it before it can properly form the basis of increasing the severity of his punishment.

The report did not suggest that the probation officer had discussed this untried charge with the defendant or his counsel. It did contain a statement to the effect that although the defendant had earlier been confronted with the evidence of his larger involvement he "would not plead guilty" and thereafter went to trial resulting in his present conviction under *N. J. S. A.* 2A:139–1. Just where the probation officer received his information does not appear in

the report. In any event, there is nothing to suggest that either the aforementioned statement or anything else in the report was called to the attention of the defendant or his counsel in connection with the sentencing or indeed at any time prior to the argument on the appeal. Counsel for the defendant was in the dark and his participation in the sentencing hearing was largely meaningless. He based his stand on the open record of the trial whereas the judge based his sentence on the closed presentence report. Surely this type of hearing with its cross bases does not fit within any rational concept of the sound administration of justice. It is entirely clear to us that the trial judge should have acceded to the request by defense counsel at sentencing for an opportunity to review the presentence report; accordingly the matter will be remanded for resentencing after the defendant has been furnished with a copy of the report and has been afforded fair opportunity to meet any prejudicial material which may play a part in the sentencing.

Furthermore, we take this occasion to announce that in all future sentencing proceedings, defendants will be entitled to disclosure of the presentence report with fair opportunity to be heard on any adverse matters relevant to the sentencing. Although persuasive constitutional arguments have been advanced (*cf. Sentencing Alternatives and Procedures, supra* at 223–24) this step is not being taken as a matter of constitutional compulsion for the Supreme Court holdings to date do not dictate it (*see Gregg v. United States,* 394 *U. S.* 489, 89 *S. Ct.* 1134, 22 *L. Ed. 2d* 442, 446 (1969) ; *Williams v. New York, supra,* 337 *U. S.* 241, 69 *S. Ct.* 1079, 93 *L. Ed.* 1337) ) and we are not now prepared to find that it is of constitutional dimension under our State Constitution. It is being taken as a matter of rudimentary fairness and though it may entail some administrative difficulties they can readily be minimized by proper handling. Thus the presentence report may first be examined by the trial judge so that matters which will actually play no part in the sentencing process may be excluded. In this fashion ir-

relevances may be eliminated, confidential sources may be protected, and disclosure may be avoided of diagnostic matters which would be harmful to the defendant's rehabilitation if he were told about them. The report, as thus edited and furnished to the defendant, must of course contain in toto the presentence material which will have any bearing whatever on the sentencing and the trial judge must so recognize in his deliberation and determination.

In *Putt v. United States*, 363 *F*. *2d* 369 (5 *Cir*. 1966) a sentence was attacked on the ground that the presentence report contained false charges. The trial judge certified that the allegedly false charges played no part in the sentencing and accordingly the sentence was upheld. In *Rex v. Campbell*, 6 *Crim. App. R.* 131, 132 (1911) the court described the English practice which permits the police officers to furnish the trial judge, after the defendant has been convicted, with a statement as to the defendant's record, background and present condition. The defendant may challenge any part of the statement, in which event the judge may put it to proof "or he may ignore it, and if he does so he should state that he is not taking it into consideration." *See Rex v. Van Pelz* [1943] 1 All Eng. 36 (*Ct. Crim. App.*); Note, *supra*, 49 *Colum. L. Rev.* at 572. The ability of trained judges to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention and to so certify for appellate purposes, has been recognized throughout our law. We have no reason to doubt that it may properly be applied in the field of sentencing.

The sentencing hearing, as we have outlined it, will fairly protect the rights of the defendant as well as the State and, conducted in commonsensible and flexible fashion, will not entail any undue delays or undue burdens on the judicial system. The probation report, when accurate and adequate, will as a practical matter generally remain unchallenged. Even where it is challenged, inquiry may quickly disclose that the challenge relates to matter of insufficient importance to warrant the taking of proof and, in such event, the trial

judge may disregard the challenged matter and so declare. It is only in the occasional instance where the challenged matter is crucial to the sentencing process that any further step will be called for but, clearly, here the risk of injustice is far too great to proceed without proof. There may be additional incidental procedural questions but they can readily be dealt with as they arise from time to time. In the meantime and as in *Wingler, supra,* 25 *N. J.* at 179, a suitable administrative directive dealing with disclosure of presentence reports will be prepared and distributed. The judgment of conviction against the defendant Kunz stands as rendered but his sentence is set aside and the cause is:

Remanded to the trial court for resentencing.

## ADDENDUM:

### On Motion to Amend Appeal to Include An Appeal from Judgment of Conviction.

PER CURIAM : The appeal of the defendant Kunz to the Appellate Division and his petition for certification to this Court were addressed solely to his sentence. The appendix did not contain the court's charge but at oral argument counsel indicated that the trial judge had erroneously charged that the defendant could be found guilty if he knew "or should have known" that the automobile was stolen. We advised counsel that, though long out of time, he was at liberty to make a motion for leave to appeal from the conviction itself because of this asserted error in the charge. We have since received a notice of motion and an accompanying brief but they are addressed solely to portions of the charge in which the trial judge read *N. J. S. A.* 2A:139–1 and stated that possession of stolen property within one year from the date of its theft raised a presumption of knowledge. Nowhere in the charge was there any suggestion that the defendant could be found guilty merely on a showing that he should have known that the automobile was stolen; on the contrary, the trial judge during the course of his charge

explicitly told the jury that the State was required to establish beyond reasonable doubt that the property was stolen and that the defendant received it knowing it was stolen. At the close of the charge counsel for defendant stated that he had "no exceptions". We have examined not only the entire charge but all of the trial testimony as well and are satisfied that any error in the charge was neither plain error within *R. R.* 1:5-1(*a*) (now *R.* 2:10-2) nor such as to impair the justness and validity of the jury's verdict of guilt.

The motion is denied.

HANEMAN, J. (dissenting)  At the outset, it should be remembered that presentence investigations had their genesis in the worthy desire to increase the individualization of treatment of convicted offenders. As noted in the majority opinion, the investigation was designed to benefit the individual offender by making available to the sentencing judge a sound and complete knowledge of the defendant's character, background, physical and mental make-up and many other factors. The attempt to attain that objective is not new. As noted in *Williams v. New York,* 337 *U. S.* 241, 246, 69 *S. Ct.* 1079, 1082, 93 *L. Ed.* 1337, 1341 (1948):

> "* * * both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and . backgrounds of convicted offenders."

To that end our *R.* 3:21-2, effective September 8, 1969, provides in part:

> "Before the imposition of sentence or the granting of probation the probation service of the court shall make a presentence investigation and report to the court which shall be confidential, unless otherwise provided by rule or court order."

The question with which we are concerned, is the necessity for and effect of a deletion of so much of that rule as makes the report confidential.

The necessity and effects of a complete disclosure of a presentence report, have long and often been debated and discussed. For reference see:—

"What Privacy for Presentence Reports" — Sol Rubin 16 *Fed. Probation* 8 (December 1952)

"The Confidential Nature of Presentence Reports" — Louis J. Sharp — 5 *Cath. U. of America Law Rev.* 127 (1955)

"Should Presentence Reports be Shown to Defendants" — Prof. Robert E. Knowlton — 79 *N. J. L. J.* 409 (1956)

"Should Presentence Reports Be Shown To Defendants" — Hon. Edward Gaulkin — 79 *N. J. L. J.* 421 (1956)

"The Presentence Investigation Report Must Be Preserved as a Confidential Document" — James B. Parsons — 28 *Fed. Probation* 3 (March 1964)

"Confidentiality of the Presentence Report: A Middle Position" — Roszel C. Thomsen — 28 *Fed. Probation* 8 (March 1964)

"The Disclosure to Defense of Presentence Reports in West Virginia" — Willard D. Lorensen — 69 *W. Virginia L. Rev.* 159 (1966-67)

"Confidentiality of Presentence Reports" — John P. Higgins — 28 *Albany Law Rev.* 12 (1964)

"The Position for Confidentiality of the Presentence Investigation Report" — Albert W. Roche — 29 *Albany Law Rev.* 206 (1965)

"In Response to Roche" — John P. Higgins — 29 *Albany Law Rev.* 225 (1965)

*American Bar Association, Standards Relating to Sentencing Alternatives and Procedures,* 200 (1968)

"The Use and Disclosure of Presentence Reports in the United States" — Richard S. Lehrich — 47 *Fed. Rules Decisions* 225 (1969)

Accordingly, an extensive repetition in depth of the *pro* and *contra* arguments is not required but a more limited discussion will suffice. The primary ground of the objection to a full disclosure is the conviction that the result will be (1) a drying-up of the factual and opinion information obtainable and includable for consideration by the judge, and (2) the further burdening of an already overburdened criminal judicial system, by according a defendant the right to a full trial of the facts and opinion contained in the report. It is my accord with the rationalization of the foregoing objections that prompts this dissent.

I realize that there is no way of ascertaining how many defendants may have been unfairly affected by unfounded, undisclosed, unfavorable information. Concededly the matter *sub judice* presents a very sympathetic case for partial disclosure. However, rather than to jeopardize the admitted benefits which now accrue to a convicted defendant under the existing rule, by employing an untried experiment, I would advance more cautiously and grant something other than complete disclosure. Particularly would I so proceed, in the absence of any proof of the necessity for a drastic change other than the isolated case now before this Court. No such change should be made unless the Court is reasonably certain of a more or less common repetition of errors.

In seeking to prognosticate the results of a mandate that every convicted defendant shall have the unrestricted right to receive an unexpurgated copy of the presentence report upon which the judge actually relies, we should lean heavily upon the practical experience and advice of probation officers who are the persons best qualified to evaluate probable results and in whose expertise and unbiased interest in obtaining a proper sentence for a defendant, there should exist complete confidence. The following statement of Albert W. Roche, Senior Probation Examiner New York State Department of Correction, Division of Probation, as it appears in 29 *Albany Law Review*, at 212, is typical of the reaction of probation officers:

"Further, those who oppose the proposition of disclosure believe 'that such a procedure would to a large extent destroy the therapeutic usefulness of the documents . . . and would, in fact, in time obliterate the very means by which information is assembled since the sources could no longer be assured that confidence would be preserved.' In essence, the advocates of non-disclosure hold that the revelation of the information in the presentence report to the defendant is to provoke the drying up of essential sources of information. Much of the data now available to judges would not be available if informants knew that they might, as a consequence, become involved in a subsequent controversy or court proceedings. To deny the courts and the correctional services this type of complete information would tend only to undermine the progress which has been made up to date in the broad field of criminal justice and penology.

Without question, the gathering and use of confidential and personal information presents a serious problem and concern to those engaged in probation work. Probation officers do not possess the protection of privilege granted to lawyers, doctors and the clergy. Yet, they deal with information every bit as intimate and personal. Experience has demonstrated that many informants who supply social information do so only in confidence. If this relationship between the probation officer and others were to be divested of its confidential nature, certainly the service in due time would be severely crippled, if not destroyed."

In no other state does there exist a mandate for complete, unrestricted disclosure. Although California and the United States District Court of Maryland, have been at times cited as requiring such complete disclosure, neither court does so require. In California "matters that are deemed to be of exceeding confidence come to the judge in a separate notation or letter and are not disclosed to any other persons." 29 *Albany Law Review, supra,* at 213. In the Maryland District Court, the proceeding is described:

"* * * The procedure in Maryland as described by Chief Judge Roszel C. Thomsen is substantially as follows: The report is prepared in two parts. One part sets out the facts and the other part contains the recommendation of the probation officer, which is never made available to the defendant or his counsel. However, the counsel may read the judge's copy either in chambers or in the court room and is invited to comment upon it prior to sentence. The probation officer is not cross-examined nor called to account in any way. If the defendant does not have a lawyer, the probation officer outlines to him the facts contained in the report and answers any questions

that might be raised. If the body of the report contains any confidential information which the probation officer believes should not be made known to the defendant, he may call that to the attention of the judge and such information shall be withheld. Here, in a court which is less strict than others as regards disclosure, recognition is given to the fact 'that there are times when full knowledge of all the contents of a report could be very disturbing to a defendant's future adjustment and relationships.' " 29 *Albany Law Review, supra,* at 213.

New Jersey will be the only judicial system in the United States where no discretion whatsoever is vested in the sentencing judge on disclosure of the final report.

The majority opinion provides:

"* * * the presentence report may first be examined by the trial judge so that matters which will actually play no part in the sentencing process may be excluded. In this fashion irrelevances may be eliminated, confidential sources may be protected, and disclosure may be avoided of diagnostic matters which would be harmful to the defendant's rehabilitation if he were told about them."

If defendant is to be furnished the presentence report in order to furnish him "with fair opportunity to be heard on adverse matters relevant to the sentencing," it must follow that the authority to exclude from the report matters which play no part in the sentencing process must refer to the initial report and not the final report upon which the judge relies. No authority is vested in the judge to delete any information — source or otherwise — from the final report before delivery to the defendant. It is hardly conceivable that a judge would rely upon the reported reputation of a defendant without being furnished with the names of those persons from whom that information was elicited. The judge would also take into account, in determining the reliability of the estimation of defendant's reputation, the nature and relationship to defendant of those persons furnishing such an analysis. The reputation and its source are inextricably tied together. Accordingly, no meaningful opportunity for the type of attack of the facts and conclusion contained in the final report, suggested by the majority, can be afforded

unless the source of the material sought to be disputed is furnished. Both or neither must remain in the ultimate report submitted to the sentencing judge.

The procedure concerning disclosure and subsequent action is delineated in the majority opinion in broad strokes. However, as I understand, the mechanics following the receipt by the trial judge of a presentence report, are as follows:

1. After study of the report the judge will advise the probation officer of the items upon which he is not going to rely in imposing sentence and direct that these items be excised.

2. The judge and the defendant or his counsel shall receive copies of the redrafted report which must contain all information which will play a part or have any bearing in the sentencing procedure.

3. The defendant may challenge any of the matter in the report and if so challenged shall be entitled to a full-blown trial of any subject he desires to controvert.

Apparently, if a defendant desires to contradict a presentence report there must be an adversary proceeding in which the probation officer will bear the burden of proving the validity of the factual statements concerning the character analysis of defendant. That officer and the witnesses interviewed by him will be the first witnesses subject to direct and cross-examination. It seems apparent that individuals interviewed who cannot be assured of their anonymity will refuse to make any statement rather than to risk a court appearance. This conclusion seems well supported by the present "non-involvement" attitude of many of the public, as well as the desire not to have to testify and be subject to cross-examination. Clearly, if this occurs, the fear of Mr. Roche that informational sources will dry up, is well justified. Conceivably we may reach the point where all that the sentencing judge will receive is a record of prior convictions — hardly much of an aid for the judge and little help to the defendant. Much injustice must arise if the court is required to sentence in a complete or partial vacuum — unassisted by a meaningful probation report.

A trial type contest of the report will also place a further unnecessary burden on an already overburdened trial court. Although it has been suggested that the court may greatly restrict proof by requiring that the hearing be limited to "matters relevant to the sentencing," it would seem to me that any matter which the judge permits to remain in a report is matter "which will actually play * * * [a] part in the sentencing," and must of necessity, therefore, be relevant and subject to attack. It is not a single isolated statement of one individual which furnishes the judicial basis for determining character but the sum total of many statements, each of which would therefore be subject to attack. To demonstrate the possible effect of disclosure, reference is made to *State v. Marvel*, 55 *N. J.* 83 (1969). On appeal, this Court permitted examination by defendant, under the existing rule, of the presentence report. Defendant's objections to the report encompassed four typewritten pages.

I am in complete accord with the statement in the majority opinion that:

> "The ability of trained judges to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention and to so certify for appellate purposes, has been recognized throughout our law. We have no reason to doubt that it may properly be applied in the field of sentencing."

To a somewhat lesser extent this also applies to trained probation officers. Such ability of the sentencing judge in combination with that of the probation officer should suffice to assure a defendant that there will be few, if any, irrelevant and improperly presented matters and that such as do find their way into a report will be ignored. Certainly confidence must be placed in the sentencing judge to ignore irrelevant and improper evidence and materials and also to require some proof of doubtful items. If there be any ground for disclosure, the revelation should be less than universal, absolute and unconditional.

In *State v. Johnson*, 28 *N. J.* 133 (1958), this Court stated:

"A rule should not ordinarily be revised or abandoned except by an exercise of the rule-making power. The nature of the problem is such that it should be explored at a judicial conference at such time as consideration may seem to be appropriate, to the end that so important a proposal may be considered upon full hearing rather than upon the naked record of an individual case which chances to come before us." (at 143)

So here, I see no reason to amend by opinion a rule which was adopted after recent lengthy discussion and consideration and which became effective as late as September 8, 1969. If any change in the rule is required, it should be accomplished by an amendment of the rule itself after deliberate study and discussion with probation officers and sentencing judges. In this manner, if the rule is amended, the entire procedure could be spelled out in detail and not left to individual interpretation.

The present rules without amendment furnish a framework within which matters similar to that now before this Court can be disposed of. *R.* 3:21–2 provides that the sentencing judge "may include with such transmittal a statement of the reasons for the sentence imposed by him." *R.* 3:21–4(b) provides in part:

"Before imposing sentence the court shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment."

The combination of these two rules should furnish defendant with the required information and opportunity to learn of and contest that which he considers untrue or unfair. If, however, required for clarity, the latter rule could be amended to mandate a detailed statement by the sentencing judge and to affirmatively afford defendant the opportunity to challenge the verity of a presentence report. To that end, after the sentencing judge has announced the basis for his sentence, defendant could be accorded an opportunity, by a trial type procedure, to disprove the accuracy of those elements of fact, reputation or character which the sentencing

judge states he finds are essential elements undergirding the determination of the type and length of sentence. I would not oblige the probation officer to sustain his report by testimony in open court nor would I permit the disclosure of the informational source upon which the report is bottomed except with the consent of the probation officer. This proceeding would furnish a fundamentally fair method to protect a defendant against inaccuracies and yet protect the confidential sources of items from revelation. The length and number of trials would also be reduced.

I would here remand to the sentencing judge, for a certification as to what part the several portions of the presentence report played in his sentencing, giving defendant a copy of that statement. I would retain jurisdiction so that if defendant desires to contest the accuracy of any portion of the matters contained in the certification of the sentencing judge, this Court may determine whether to again remand for trial of any portion thereof.

FRANCIS, J. (dissenting) As Justice Haneman points out, *Rule* 3 :21–2 was adopted less than three months ago. Although somewhat revised in form, it preserved the presentence report's confidentiality, its principal characteristic since the advent of our new court system in 1948. The change in form was intended to indicate to sentencing judges what had been made plain through many conferences on proposed changes in rules of practice and procedure, *i. e.,* that disclosure of all or only part of a presentence report was a matter for the fair exercise of their discretion. Adoption of the rule by the majority of the Court was not a will-o'-the-wisp decision. The problem has been bruited about for many years and deliberated upon by committees of experienced trial judges, members of the bar, and probation officers. The decision always reached by the majority of this Court was that the report should remain confidential, except for those matters which the sentencing judge in his discretion felt should be disclosed to the convicted defendant, or, in the alternative,

should be excluded by the judge as a factor influencing his determination of the sentence to be imposed. In my judgment the practice has worked well, and with the rare exceptions to which any human institution is subject, has served the beneficent social purpose of making the penalty fit the offender as well as the crime he committed. *State v. White,* 27 *N. J.* 158, 184 (1958) (concurring opinion). Consequently, I agree with Justice Haneman's reassertion of the pronouncement of this Court in *State v. Johnson,* 28 *N. J.* 133, 143 (1958), *cert.* den. 368 *U. S.* 933, 82 *S. Ct.* 370, 7 *L. Ed. 2d* 195 (1961), that "a rule should not ordinarily be revised or abandoned except by an exercise of the rule-making power. The nature of the problem is such that it should be explored at a judicial conference * * *."

The convulsive change in Rule 3 :21–2 brought about by the majority opinion in this case is contrary to the sound view expressed in *State v. Johnson* and is unwise and inexpedient at this time. Our criminal trial lists are overflowing, and inordinate delay is the order of the day. A speedy trial which is so important from a public standpoint as an effective deterrent to potential violators of the criminal law is the exception rather than the rule. There are various reasons for the lengthening criminal process, not the least of them being hearings on the many motions to suppress evidence resulting from allegedly illegal searches and seizures by police officers, and hearings on almost innumerable post conviction proceedings. The majority opinion now adds a heavy burden to already over-burdened trial lists and trial judges. But the most disturbing aspect is that it does so without warning and without prior consideration of the administrative and procedural burden thrown upon county judges and probation officers.

It seems to me that if the majority wishes to do what obviously it has the power to do, it should decide the present case, as it can very easily and justly in the manner hereafter suggested, and give some necessary attention to the study and formulation of administrative procedures for the guidance of sentencing judges and county probation depart-

ments. It is no secret that in the past county judges and dedicated probation officers have been opposed to a blanket rule under which the presentence report would be turned over routinely to the convicted defendant. These judges and probation officers are the laborers in the vineyard. We should not open the floodgates and inundate them with this new burden when their expertise could aid us in regulating and controlling it. Accordingly, I join Justice Haneman in dissenting from the majority's summary departure from the Court's so recently adopted Rule 3:21–2. Assuming the change is desired by the majority, it should come only after study and conference designed to implement it practically and for the benefit of all concerned.

As mentioned above, the present case should not be treated as the vehicle for abandonment of *Rule* 3:21–2. I agree that the trial judge should not have permitted the unproved allegation in the probation report that the defendant was a member of a stolen car ring to be an influential factor in his consideration of the sentence to be imposed. But there is nothing in the record to indicate that he was influenced by it in any way.

It is plain from the probation report that the defendant knew of the allegation that he was a "contact" man in New Jersey for a stolen car ring. In fact it appears in the report that he was "confronted" with the State's evidence which allegedly supported the charge, and that he denied any such involvement. Consequently an experienced sentencing judge, educated in the proper use of a probation report through the many judicial conferences and committee reports on the subject, would and should know that the unproved suggestion of additional criminal involvement must be disregarded. So the simple question in this case is: Did the trial judge exclude it from consideration in deliberating upon the sentence to be imposed? If he did, that ends the matter. Therefore, I would ask this trial judge to certify to us whether the alleged collateral criminal involvement was a factor which influenced his decision to imprison defendant for one to two years in State

Prison. Upon return of the certification, which I expect would be furnished in good faith and in good conscience, our disposition of the appeal should be made. If the improper material was not a factor in the sentence, the judgment should be affirmed. If it was a factor, then the record should be remanded to the trial court for reconsideration of the sentence.

*For remandment for resentencing*—Chief Justice WEIN-TRAUB and Justices JACOBS, PROCTOR, HALL and SCHETTINO —5.

*For remandment for certification*—Justices FRANCIS and HANEMAN—2.