89 N.J. Super. 400 (1965)
215 A.2d 75
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
SCIPIO BARBATO, DEFENDANT.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided November 22, 1965.
*402 Mr. S. David Levy, Assistant Union County Prosecutor, for plaintiff.
Mr. John T. Glennon for defendant (Messrs. Weiner, Weiner & Glennon, attorneys).
WOOD, WM. FILLMORE, J.C.C.
Defendant seeks post-conviction relief pursuant to R.R. 3:10A-1 et seq. from a conviction and sentence in this court on January 15, 1954 for the crimes of breaking, entering and larceny. His petition sets forth four grounds for relief, namely: (1) the disproportion between his sentence and that of his two co-defendants, (2) a mistaken reference by the sentencing judge to a non-existing "bad record"; (3) the failure of the court to provide or offer him counsel at any time during the proceedings, and (4) the failure of the court to give him an opportunity to make a statement on his own behalf before imposing sentence. *403 The third ground, if established, would vitiate both the conviction and the sentence. The others relate only to the sentence.
The hearing in this matter began on May 21, 1964, on which date defendant testified in his own behalf and then rested, and the State offered evidence of assignment of counsel for one of the codefendants. The matter was continued until July 17, 1964 to give the State an opportunity to offer whatever additional evidence it wished. In the interim, on recommendation of the prison psychiatrist, defendant was committed to the New Jersey State Hospital. His diagnosis was "schizophrenic reaction, chronic undifferentiated type, with many aggressive and homicidal features." The hospital's medical director advised defendant's attorney that it would be detrimental to defendant's health for him to appear in court. For that reason this matter was then adjourned indefinitely.
After defendant's condition had improved sufficiently to permit his return to State Prison and presumably also to permit his further appearance in these proceedings, this court contacted the prosecutor with a view to scheduling the case for completion of the hearing and was advised by the latter that he had not been able to discover any significant additional evidence, and hence no further evidence would be offered on behalf of the State.
It follows that any further hearing in this matter would be purposeless. I must therefore determine the facts from the evidence already introduced by the parties and from my personal examination of the records of the county clerk and the probation department. I have taken judicial notice of such records.
The Union County grand jury for the September session of the 1953 term returned indictment No. 97 against defendants Scipio Barbato, Douglas Murphy and Alaindo Nicholas Barbato (the latter being the brother of Scipio). The indictment, which was filed with the county clerk on December 3, 1953, contained three counts. The first count charged defendants with breaking and entering, and the second and third *404 counts charged them with larceny of property valued at $847 and $800, respectively. On December 18, 1953 Scipio entered a plea of non vult to the indictment, and on January 15, 1954 he was sentenced to five to seven years in State Prison, with 102 days' credit for time spent in jail. A single sentence was imposed for the entire indictment rather than separate sentences for each count thereof. The other two defendants entered pleas and received sentences on later dates. Their specific pleas and sentences will be discussed below.
Scipio was not represented by counsel at the time of the plea or at the time of the sentence. There is no doubt that he lacked the funds to engage his own attorney. He could not recall whether, at the time of the arraignment or plea, he was asked if he wished to have an attorney assigned to represent him. The reporter who attended at the time of the arraignment and plea is dead, and no transcript of the proceedings could be located.
The burden is on a defendant, in post-conviction relief cases, to prove that he is entitled to the relief sought. Cf. Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). Since defendant was unable to prove that the court failed to offer him counsel at the time he entered his plea to the indictment, his application to set aside the plea or conviction must be denied. Compare Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
R.R. 1:12-9(a), which has been in effect since September 9, 1953, prior to defendant's original appearance in court, provides in pertinent part as follows:
"Where a person charged with crime appears in a trial court without counsel, the court shall advise him of his right to counsel and of the privilege of having counsel assigned, if indigent, and assign counsel to represent him unless he elects to proceed without counsel or is about to obtain counsel."
I cannot assume that the sentencing judge failed to comply with the mandate of this rule.
*405 Furthermore, there is some affirmative basis for inferring that defendant was offered assigned counsel. The evidence indicates that by order of December 22, 1953 counsel was assigned to represent co-defendant Alaindo Nicholas Barbato. One may reasonably suppose that the court did not make a distinction between the two defendants.
While the challenge of the conviction must fail for lack of proof, the sentence was clearly invalid. The principal reason is that the court undoubtedly failed to afford defendant an opportunity to speak in his own behalf. In addition, while not equally certain, it is highly probable that the severity of the sentence was influenced by mistakes of fact.
With respect to the first stated or principal reason for invalidity, R.R. 3:7-10(c), then in effect, provided:
"Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."
No such opportunity was afforded this defendant.
Fortunately, the transcript of the sentencing proceedings was available and it was offered into evidence. The significant part thereof reads as follows:
"MR. ISAACS [Assistant Prosecutor]: Indictment #97, September Session, 1953 Term. State v. Scipio L. Barbato. I move for sentence at this time.
THE COURT: Barbato has a bad record. The sentence is five to seven years in States Prison, with 102 days credit for time spent in the County Jail."
There was no conversation between the court and the defendant. The court made no comment directly to him; and he was given no chance to make any comment to the court. Of course, since he had no attorney, no one spoke on his behalf.
It is now firmly established in this State that the failure of the court to accord a defendant the right of allocution, that is, the right to speak in his own behalf before being sentenced, makes the sentence illegal. State v. Harris, 70 N.J. Super. 9 (App. Div. 1961); State v. James, 84 N.J. Super. *406 109 (App. Div. 1964); State v. Laird, 85 N.J. Super. 170 (App. Div. 1964). Compare Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), and Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).
Incidentally, effective January 2, 1964, R.R. 3:7-10 (c), mentioned above, was redesignated as R.R. 3:7-10 (d) and amended to read in pertinent part as follows:
"Before imposing sentence the court shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by counsel."
However, the amendment did not change the requirement that defendant be issued a personal invitation to speak prior to sentencing. State v. Laird, supra, 85 N.J. Super., at page 178.
I turn now to the factors which apparently affected the severity of the sentence. After carefully examining the evidence, I have the distinct impression that defendant was the victim of an injustice resulting from a misconception on the part of the sentencing judge. As already noted, the judge commented that defendant had "a bad record." He did not then specify what record he was referring to; but ordinarily, in this context, the term "record" refers to criminal convictions. At that time, as a matter of fact, defendant had never been convicted of any crime. Aside from certain pending charges (hereinafter discussed), his only record of conflict with the law consisted of a juvenile record of truancy from school in 1947 (when he was 16 years old), three convictions for violations of the Motor Vehicle Law and one contempt of court charge, which appears to have been related to, and to have been merged with, one of the motor vehicle violations.
The judge discussed the factors which influenced him in a letter he wrote on March 4, 1954 (shortly after the sentence) to David W. Dowd of Livingston, an attorney, who had recently represented defendant in Essex County, answering the latter's communication of March 3.
*407 The judge's letter reads as follows:
"I have your letter of March 3rd with reference to Scipio Barbato, in which you say you think the sentence imposed was too severe and that he had no criminal record.
A check of our files shows that this young man was first brought to Juvenile Domestic Relations Court [sic] in January, 1947 at the age of 15, because he would not go to school and roamed the streets at night. He was classified as a delinquent with an inferior normal intelligence and was committed to the State Home for Boys. His criminal record includes five different jail sentences and an undesirable discharge from the United States Army. The indictment under which he was sentenced contained three counts, and according to FBI records, there are the following open charges against him:
August, 1953  Illegal sale of fire-arms in Union Township, N.J.
August, 1953  Breaking and entering and Larceny in Maplewood, N.J.
November, 1953  Burglary in Milburn, N.J.
Apparently he was sentenced in Essex County for the robbery in Irvington. This young man also has a very bad work record.
I see nothing excessive about the sentence or any reason why this sentence should be changed."
It will be noted that the judge's letter referred to a "criminal record" consisting of "five different jail sentences and an undesirable discharge from the United States Army." However, as already indicated, the sentences were for motor vehicle violations rather than for crimes. Furthermore, a careful reading of the fingerprint returns in the Probation Department file, from which the judge presumably got his information, indicates that although there are five entries thereon relative to the motor vehicle violations and the contempt of court charge, there were only three different jail sentences. Two of the entries appear to be duplications.
As above stated, the judge also referred to defendant's undesirable discharge from military service as part of his criminal record. According to information received from defendant at the time of the presentence investigation, the discharge arose out of his illicit sex relations with a woman in French Morocco, which resulted in her giving birth to an illegitimate child. Regardless of the cause of the discharge, it certainly did not constitute a criminal record.
*408 Finally, as justification for his sentence, the judge referred in his letter to a sentence in Essex County for robbery and to three "open charges." At the time of the sentence in Union County the robbery charge was also pending, sentence therefor not having been rendered until five days later. While a judge has wide discretion in sentencing matters, reliance upon other pending charges as a basis for increasing the penalty for the charge before the court is of highly questionable propriety. Cf. State v. Pohlabel, 61 N.J. Super. 242, 250 (App. Div. 1960). It is axiomatic that a person must be presumed innocent until he is proved guilty. Sometimes pending charges do not result in indictments or convictions. In fact, one of the open charges mentioned, that of illegal sale of firearms, was dismissed by the grand jury. For the other two open charges, as will hereinafter appear, defendant received only a sentence which was concurrent with that for robbery.
Some indication of the probable weight given to defendant's so-called criminal record, and of the probable prejudice to the defendant thereby, may be obtained from a comparison of the sentences which the same judge gave the co-defendants. Alaindo received only a six months jail sentence, although he (unlike Scipio) did have a criminal record (such record consisting of a suspended sentence in New York State in 1947 for malicious mischief, a sentence to Annandale by the Union County Court in 1949 on four charges of breaking and entering, and a suspended sentence to Bordentown by the Morris County Court in 1951 for breaking, entering and larceny) and although he was on parole from Annandale at the time of the instant offenses. Furthermore, Alaindo's penalty covered not only the instant offenses but two additional indictments for similar offenses. Murphy, who had a record of a conviction in 1941 for larceny and who appears from the probation report to have been the leader in the instant crimes, received only one to two years in State Prison. His sentence covered three additional indictments for similar offenses. Both co-defendants, like Scipio, pleaded non vult.
*409 A sentence based upon a misunderstanding of the contents of the presentence report, like a sentence without according defendant his right of allocution, must, upon timely application, be set aside so that defendant may be resentenced. State v. Pohlabel, supra.
The difficult question in this case is not whether defendant's rights were violated by the sentencing procedure. There can be no doubt that he was denied his right of allocution and little, if any, doubt that the sentence was effected by the judge's misconception of the prior record. The troublesome question is whether, in view of the fact that the maximum term of the five to seven years' sentence expired in January 1961 (over four and a half years ago), this application is timely.
Defendant is presently incarcerated as a result of subsequent consecutive sentences imposed by the courts of other counties. Shortly after his sentence in Union County, he received the following sentences in Essex and Morris counties: (1) a 7-10-year consecutive sentence by the Essex County Court on January 20, 1954 for robbery; (2) a 2-3-year concurrent sentence by the latter court on March 24, 1954 for breaking, entering and larceny, and (3) a 2-3-year consecutive sentence by the Morris County Court on April 2, 1954 for breaking, entering and larceny. The Essex County sentence for breaking, entering and larceny was presumably for the second and third open charges mentioned in the above-quoted letter.
Defendant contends that the issues with respect to his Union County sentence are not moot, even though that sentence has been fully served, since a resentencing to a lesser term would either entitle him to credit against the sentences from Essex and Morris counties or would require the voiding of the latter sentences because they were made consecutive to an invalid Union County sentence.
The contention that the subsequent sentences would have to be voided is without merit. State v. Quatro, 33 N.J. Super. 333 (App. Div. 1954).
*410 There remains only the question whether a fully served illegal sentence may be set aside, and a new and favorably modified sentence imposed, in order to permit defendant to seek credit for the difference between the original and the modified sentences toward sentences imposed at different times by courts of different counties. This precise question has never been decided in this State.
State v. Laird, 25 N.J. 298 (1957), dealt with an action by which the trial court, on its own motion or on motion of the State, increased a valid sentence after it had been satisfied. That was a drunken driving case. Originally the court, being unaware that defendant had a prior conviction for a similar offense, imposed only a first offense penalty, consisting of a fine and forfeiture of driving privileges for two years. Approximately two months later, after the fine had been paid, the court, having learned of the prior offense, resentenced defendant in accordance with the statutory mandate for second offenders. The Supreme Court held that the resentencing was improper. It stated (at page 306) that "where a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of the court at which the sentence was pronounced."
Ex parte De Luccia, 10 N.J. Super. 374 (Cty. Ct. 1950), involved a situation where the Essex County Court failed to state expressly and clearly whether sentences of one to three years on each of four indictments were concurrent or consecutive, although he allegedly intended that they be served consecutively. On subsequent habeas corpus proceedings, the Mercer County Court held that the sentences must be deemed concurrent and that defendant, having already served three years less commutation time allowable for good conduct, was entitled to be discharged. Said the latter court:
"Correction of the sentences to accord with the alleged intention of the court is now impossible, for with the service thereof the power of the court over the sentences has been exhausted. These sentences were not illegal, but valid, and they have been served." (at p. 383)
*411 De Luccia and Laird were concerned with whether punishment could be made more onerous after the original, valid sentences had been satisfied; and they are therefore factually distinguishable from the instant case.
Nevertheless, I think that defendant's Union County sentence should not be disturbed at this late date, even though the original sentence, having been based upon an apparent misapprehension of defendant's prior record, was probably greater than what the sentencing judge would have imposed if he had properly understood that record. Certainly the original sentence is greater than what I would now be inclined to impose under the circumstances as I understand them.
This case must be distinguished from those involving illegal convictions, which should be set aside at any time, even after the penalty has been paid or served, in order to clear defendant's record of the convictions and relieve him of the many obvious disadvantages and disabilities which accompany a criminal record and which survive the satisfaction of the sentence.
The present case should also be distinguished from the situation where the same court, as part of its pattern of punishment and rehabilitation for a single series of offenses, imposes several consecutive sentences. In that situation the court may properly, for purposes of substantial justice, modify the pattern even after one or more of the sentences have been fully served. For example, in State v. Pohlabel, supra, wherein defendant had received seven 3-5-year consecutive sentences, totalling 21 to 35 years, and wherein defendant had served approximately nine years (which equalled the maximum time for the first sentence and approximately four years toward the second sentence), the Appellate Division ordered the sentences vacated so that defendant could be appropriately resentenced.
In the instant case defendant's subsequent sentences were by entirely different courts and for wholly unrelated offenses. His circumstances are not essentially different from *412 what they would have been had he been sentenced in the other counties after completion of and discharge from the Union County sentences. Sound administration of justice dictates that credit for time already spent in custody be allowed only against time still due for the same offense or series of offenses. No one, I believe, would seriously contend that a person who is acquitted after spending time in jail awaiting trial should receive credit for such time against the penalty for another, wholly unrelated offense or that he would be entitled to keep such time in reserve pending any future sentence he might receive. See State v. Sabo, 86 N.J. Super. 508, 512 (App. Div. 1965), wherein the court observed that even "if a resentencing resulted in a reduction of the penalty, the time already spent in prison cannot be recaptured," the original sentence having been fully served. See also United States ex rel. Quinn v. Hunter, 162 F.2d 644, 648 (7 Cir. 1947). Cf. People ex rel. Walker v. People, 3 A.D.2d 623, 157 N.Y.S.2d 993, 994 (App. Div. 1956).
In Griffin v. United States, 173 F.2d 909, 910 (6 Cir. 1949), the court did mention the possibility that the setting aside of a sentence, after it had been served, might furnish the basis for further proceedings in the courts of a different circuit seeking "a correction in the time for commencement" of another sentence which had originally been scheduled to begin at the expiration of the one eliminated and which was then being served by the defendant. However, that case involved a defective indictment rather than, as here, a mere illegal sentence; and, furthermore, the reference to a possible "correction" of the later sentence was nothing but speculative dictum.
Youst v. United States, 151 F.2d 666 (5 Cir. 1945), wherein the court directed that a served sentence be set aside and that credit be given therefor, likewise involved a defect in an indictment and also apparently involved, like State v. Pohlabel, supra, a series of sentences imposed at about the same time by a single court for related offenses.
*413 I have not overlooked the language of R.R. 3:10A-13, which provides that "a petition to correct an illegal sentence may be filed at any time." However, properly interpreted, that language means any time when a change of sentence would result in appropriate and meaningful benefit to the defendant. Such, I believe, was the intent of the Supreme Court when it promulgated the rule.
Accordingly, the petition is denied in its entirety.