140 N.J. Super. 459 (1976)
356 A.2d 449
THE STATE OF NEW JERSEY
v.
STANLEY ROBINSON, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided March 12, 1976.
*463 Mr. Thomas P. Argentieri for defendant (Mr. William J. Gearty, Deputy Public Defender, attorney).
Mr. Charles F. Shaw, III, Assistant Prosecutor for the State (Mr. James M. Coleman, Jr., Prosecutor of Monmouth County, attorney).
PATRICK J. McGANN, JR., J.S.C.
Defendant seeks an order changing his present custodial sentence into one to be served in "a custodial or non-custodial treatment or rehabilitation program for drug * * * abuse" in accordance with R. 3:21-10(b).
On February 7, 1975, pursuant to a plea agreement, defendant was sentenced to not less than five nor more than seven years in the New Jersey State Prison concurrently on each of three counts of forgery. He promptly appealed the sentence he had agreed to accept. While the appeal was pending he moved the trial court, on April 14, 1975, for reduction of the sentence. No reasons were advanced for the relief sought. That motion was denied because at that point the trial court lacked jurisdiction to entertain it. See R. 2:9-1(a). Thereafter, on August 29, 1975, while the appeal was yet pending, defendant filed a motion for transfer to a drug treatment program. The documentation required by R. 3:21-10(c) was not submitted. See State v. Davis, 68 N.J. 69, 85 (1975). That motion was denied without prejudice on October 16, 1975.
*464 The original sentence was affirmed on November 6, 1975. This present motion was filed on January 16, 1976  well beyond the 20-day limitation under R. 3:21-10(a) but obviously within the "at any time" language of R. 3:21-10 (b), if "at any time" is to be read literally. If "at any time" may not be read literally but does have a fixed limit, then a determination must be made whether that limit has been exceeded. In this case, I determine that there is a limit, that the motion is beyond that limit and that this court is without jurisdiction to entertain the motion or to grant the relief sought.
R. 3:21-10 deals with a court's power to change its own sentence. It has a history. Knowing that history is essential to understanding the limitation on that power and to determining what "at any time" means. In State v. Kowalczyk, 3 N.J. 231 (1949), Chief Justice Vanderbilt reviewed that history. Kowalczyk had been sentenced on November 22, 1948. He appealed and the judgment of conviction was affirmed on October 24, 1949. When he surrendered himself to begin serving his sentence, the trial judge on November 16, 1949, over objection of the State, suspended the sentence originally imposed. The State appealed and argued that the judge simply had no power to do so. A unanimous Supreme Court agreed; reversed the trial court and reinstated the original sentencing, holding:
At common law the power of a trial judge to alter a sentence expired with the term of court at which the sentence had been imposed, State v. White, 103 N.J.L. 153 (E. & A. 1926); See also 1 Chitty on Criminal Law 721. This rule, however, was never a satisfactory one because the extent of the judge's power in the individual case was variable, depending upon whether the judgment was entered early or late in a term. Accordingly the Legislature, after various experiments, in 1928 (P.L. 1928, c. 231) fixed thirty days from the date of conviction as the time within which the judge might act in place of the indefinite rule of the common law, R.S. 2:190-15. With the abolition of three terms of court a year on the promulgation of our new Rules and the substitution therefor of an annual term commencing each September (Rules 1:1-1, 2:2, and 3:102-2), Rule 2:7-13 was adopted extending the power of the *465 judge to resentence a defendant "within 60 days from the date of the judgment of conviction." [at 233]
The "legislative experiments" mentioned in the above passage were these:

L. 1898, c. 237 § 55.
After conviction and sentence, the court before which such conviction was had, upon the application of the defendant for a new trial, shall have power, at any time during the term in which the judgment is entered, to open and vacate the same and grant a new trial, and discharge the defendant from custody upon bail, pending such new trial, or may, upon the application of the defendant, or on its own motion, open and vacate the judgment entered on any conviction and re-sentence the defendant, as right and justice may seem to require, and discharge the defendant from custody upon bail pending such re-sentence. [Emphasis supplied]
L. 1921, c. 236 § 1 amended the above to read as follows:
After conviction and sentence the court before which such conviction was had upon the application of the defendant for a new trial shall have power at any time within the period of six months from the date of the entry of such conviction, to open and vacate the same and grant a new trial and discharge of the defendant from custody upon bail, pending such new trial, and may also at any time within the period of six months from the date judgment is entered, upon application of the defendant, or on its own motion, open and vacate the judgment entered on any conviction and resentence the defendant, as right and justice may seem to require and discharge the defendant from custody upon bail, pending such resentence; provided, no writ of error is pending to review such judgment. [Emphasis supplied]
Thus, the Legislature amended the common law power of a court to change its own judgment of conviction from the variable time period of the "before the end of the term" concept to a fixed period beginning with the entry of the judgment. The end result was the same, however. Once the period had run the court was powerless.
L. 1928, c. 231, again amended § 55 to read as follows:
After conviction and sentence the court before which such conviction was had upon the application of the defendant for a new *466 trial shall have power at any time within the period of six months from the date of the entry of such conviction, to open and vacate the same and grant a new trial and discharge the defendant from custody upon bail, pending such new trial, and may also at any time within the period of thirty days from the date judgment is entered, but not thereafter, upon application of the defendant, or on its own motion, open and vacate the judgment entered on any conviction and resentence the defendant, as right and justice may seem to require and discharge the defendant from custody upon bail, pending such resentence; provided, no writ of error is pending to review such judgment. [Emphasis supplied]
By that change the Legislature drastically reduced the time during which a court had the power to resentence a defendant from six months to 30 days after the judgment of conviction. Such was the state of the law at the time the 1947 Constitution was adopted (R.S. 2:190-15).
To speak in terms of a court's "power" to alter or change a sentence previously imposed is to speak of its jurisdiction to act. A court cannot decide for itself the scope of its jurisdiction. Jurisdiction is a matter of substance, not procedure.
Jurisdiction over the subject matter is the power of a court to hear and determine cases of the class to which the proceeding in question belongs. It rests solely upon the court's having been granted such power by the Constitution or by valid legislation, and cannot be vested by agreement of the parties. [State v. Osborn, 32 N.J. 117, 122 (1960)]
See also State v. Bigley Bros. Inc., 53 N.J. Super. 264, 268 (App. Div. 1958); Asbury Park v. Shure, 54 N.J. Super. 46, 50 (Cty. Ct. 1959). See generally, Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 537 (1953).
The fundamental concept, then, is this: once a court has properly decided a matter it is finished with it and no longer has any power over it. The sole relief open to a dissatisfied litigant is the right to appeal. The common law allowed the original power to extend beyond the imposition of a criminal sentence to "the end of the term." As recognized in Kase v. Kase, 18 N.J. Super. 12 (App. Div. 1952),
*467 * * * [a]n action terminates with the final decree or judgment, and the court loses jurisdiction over the cause and over the parties after the next term of court, or after expiration of the time for appeal, or some other certain period. Tichenor v. Collins, 45 N.J.L. 123 (Sup. Ct. 1883). The parties are then supposed to have left court and gone home. [at 15]
The Legislature, having the basic right under the Constitution to extend or limit a court's jurisdiction, changed "the end of the term" concept to a specific time limitation  eventually settling on a period of 30 days from the imposition of sentence.
N.J. Const. (1947), Art. VI, § I, par. 1, vested all judicial power in the Supreme Court, Superior Court, County Courts and inferior courts of limited jurisdiction. In § II, par. 3, of that Article power to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts" was vested in the Supreme Court. Under that power the Supreme Court reduced the former practice of three terms a year to one term, Rule 2:2, and simultaneously adopted Rule 2:7-13 as follows:
The court may correct an illegal sentence at any time.[1] The court may reduce or change a sentence within 60 days from the date of the judgment of conviction.
By rule, the time within which a court retained jurisdiction to change its own sentence was extended from 30 to 60 days. It can fairly be said to have been done because of the reduction of terms of court from three to one a year. 60 days would be well within the concept of "before the end of the term" of the common law and the maximum of six months established at one time by the Legislature. Thus, while the time period is jurisdictional and substantive, the court was well within existing concepts of substantive law when it set forth that period in the rule. Cf. American Trial *468 Lawyer's Ass'n v. New Jersey Sup. Ct., 66 N.J. 258 (1974); Busik v. Levine, 63 N.J. 351 (1973); Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). That 60-day limitation remains unchanged to the present (R. 3:21-10(a)) and cannot be expanded. R. 1:3-4(c).
The "at any time" language was first introduced into the rule in 1967 when then R.R. 3:7-13(a) was amended by the addition of the italicized clause.
R.R. 3:7-13(a). A motion to reduce or change a sentence shall be filed not later than 60 days from the date of the judgment of conviction, or, if an appeal is taken within the 60 days, not later than 20 days of the issuance of the mandate by the appellate court. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction or, if an appeal was taken within 60 days, within 35 days of issuance of the mandate by the appellate court, and not thereafter; provided, however, that an order changing a custodial sentence to permit transfer of a defendant to a narcotics treatment center may be made at any time.
The latest change became effective September 8, 1975. The basic 60-day rule appears in R. 3:21-10(a); the "at any time" exceptions in R. 3:21-10(b).
(b) Exceptions. A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney.
If "at any time" is to be read literally, what are the consequences?
The first practical consequence would be obvious instability in the whole penal structure. Trial courts would be free to tinker with validly imposed sentences at any time during the continuation of the custodial portion thereof. Finality, *469 the public policy of an end to court concern with a particular case, would be meaningless. Motions to change a sentence could be brought years after the judgment of conviction. Theoretically, a motion would be tenable even after denial of parole release. Attempts to "judge shop" in a post-conviction sense would be fostered. Endless filing of groundless motions would be encouraged.
If "at any time" is to be literally read, it poses dual constitutional problems. If it expands the basic 60-day period it is an attempt through the rule-making power to change substantive law  a procedure condemned in Winberry v. Salisbury, supra, 5 N.J. at 248. Under our Constitution the Supreme Court would have no power to do so.
The federal courts have come to the same conclusion in interpreting applications for changes of sentences under Fed. R. Crim. P. 35. Under the federal system once the specified time period after imposition of sentence has run, the court has lost jurisdiction over the subject matter and cannot entertain the application. United States v. Robinson, 457 F.2d 1319 (3 Cir.1972); United States v. Gorman, 431 F.2d 632 (5 Cir.1970); United States v. Ellenbogen, 390 F.2d 537 (2 Cir.1968), cert. den. 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968).
Read literally, "at any time" would also unconstitutionally cross the dividing line between the judicial and executive functions. Once the accused has had his day in court to litigate the issue of his guilt; once he has been validly sentenced and after the 60 days have passed within which he has a substantive right to move for a reconsideration of his sentence  his separate right of appeal aside  the judiciary has completed its work. The person of the convict is turned over to the Executive for service of the sentence. Within constitutional and legislative grants of power the Executive may parole; the Chief Executive may pardon or reprieve.
*470 Article III, par. 1, of our 1947 Constitution provides:
The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.
Article V, § 2, par. 1, provides:
The Governor may grant pardons and reprieves in all cases other than impeachment and treason, and may suspend and remit fines and forfeitures. A commission or other body may be established by law to aid and advise the Governor in the exercise of executive clemency.
"The exercise of executive clemency is exclusively the Governor's province." State v. Mangino, 17 N.J. Super. 587, 591 (App. Div. 1952). See also, Ex parte Fitzpatrick, 9 N.J. Super. 511, 519 (Cty. Ct. 1950), aff'd 14 N.J. Super. 213 (App. Div. 1951). Actions exclusively within the power of the Executive are not reviewable by the courts. See, e.g., State v. Butler, 32 N.J. 166, 196 (1960), cert. den. 362 U.S. 984, 80 S.Ct. 1074, 4 L.Ed.2d 1019 (1960); Passaic Cty. Bar Ass'n v. Hughes, 108 N.J. Super. 161 (Ch. Div. 1969).
The scope of executive clemency is delineated by statute. See N.J.S.A. 2A:167-1 et seq. N.J.S.A. 2A:167-4 permits the commutation of a sentence "upon such terms, conditions and limitations as the governor, in his discretion, may direct." Since the Governor clearly could commute a sentence on condition of defendant's attending a drug treatment program, any arrogation of the same power by the judiciary would be an interference in an area solely that of the Executive. Read literally, "at any time" would do just that and be unconstitutional.
The federal courts have come to a like conclusion in this constitutional sense in construing the similar 120-day provision of Fed. R. Crim. P. 35. United States v. Marchese, *471 341 F.2d 782, 788 (9 Cir.1965) cert. den. 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64 (1965). See also Egan v. United States, 268 F.2d 820, 824 (8 Cir.1959), cert. den. 361 U.S. 868, 80 S.Ct. 130, 4 L.Ed.2d 108 (1959).
The Supreme Court of Colorado has had occasion to consider an analogous situation. In People v. Herrera, 183 Colo. 155, 516 P.2d 626 (1973), a legislative enactment authorized the court to grant post-conviction relief where a significant change in the law subsequent to a petitioner's conviction or sentence had occurred. The statute allowed the court, on petition, to apply the new standard retroactively. See 516 P.2d at 627. The court said, in invalidating the statute, that implied in the provision was "the power of commutation," the authority to reduce an otherwise valid sentence. Id. at 628. The court held that
* * * the governor has the exclusive power to grant reprieves, commutations and pardons after conviction * * * any attempt, therefore, to exercise such power by the judicial department, even though legislatively sanctioned, would be a violation of the doctrine of separation of powers. [Emphasis by the court]
This pronouncement was reaffirmed by the same court a year later. See People v. Mankowsky, 529 P.2d 314 (Colo. Sup. Ct. 1974).
Other jurisdictions have noted the same doctrine. That the pardon power is the exclusive province of the Governor, thereby depriving a court of jurisdiction once it adjourns, was early recognized in North Carolina. See State v. Lewis, 226 N.C. 249, 37 S.E.2d 691, 693 (Sup. Ct. 1946). The rationale of this decision was later followed in a pronouncement which effectively sets forth the doctrine of separation of powers in conjunction with sentencing and pardon. In Goble v. Bounds, 281 N.C. 307, 188 S.E.2d 347 (N.C. Sup. Ct. 1972), the court said:
The Legislature makes the laws. The judicial branch interprets them and enters judgment. The executive branch takes over the custody of the prisoner and effects the judgment with such modifications *472 favorable to the prisoner as the above designated agencies deem for the best interest of the State and the prisoner. [188 S.E. 2d at 349]
The common law "end of the term" limit; the various legislative limits; the inflexible 60-day limit under which our courts have functioned since 1948, all give recognition to a fact, viz., at the precise moment of imposition of sentence custody of a prisoner does not instantaneously pass from the Judiciary to the Executive. The custodial sheriff is an officer of both the court and the Executive for a short period of time while the process of transfer is taking place. See People v. Thomas, 52 Cal.2d 521, 342 P.2d 889, 895 (Cal. Sup. Ct. 1959). But the transfer does take place; the Court does lose jurisdiction over the person and the subject matter of the case to the Executive. It cannot resurrect that jurisdiction. At that point the constitutional executive power of pardon and reprieve becomes choate to that prisoner. See United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 20, 59 L.Ed. 129 (1914); United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 286, 4 L.Ed.2d 259 (1960); United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 1333-1334, 91 L.Ed. 1610 (1971).
For the foregoing reasons any attempt to literally read "at any time" leads to unconstitutional results.
There is a presumption of constitutionality which applies to the rule-making efforts of our Supreme Court. See, e.g., American Trial Lawyers' Ass'n v. New Jersey Sup. Ct., supra, 126 N.J. Super. at 589-590. There is a reading of "at any time" which does lead to a constitutional result. In a problem of construction of this sort, a court must consider the former law, the mischief to be corrected and the new remedy provided. Richardson v. Essex Nat'l Trunk & Bag Co., 119 N.J.L. 47, 50 (E. & A. 1937).
Under the rule prior to 1967 (and the addition of the "at any time" language) there could be a hardship imposed on a convicted addict who promptly appealed. Once his notice of appeal was filed, the trial court was deprived of jurisdiction *473 for all purposes. R. 2:9-1(a). A motion to the trial court for a change of sentence was not cognizable unless application was first made to the Appellate Division to remand the matter to the trial court for that limited purpose. Compare State v. Kowalczyk, supra. Such a motion would be both time-consuming and expensive. See R. 2:8-1. Unless that procedure were followed, the convict whose current addiction was demonstrable would have to wait until his appeal was determined before reapplying to the trial court. As to him, his right to apply for appropriate change in sentence directed toward his addiction within 60 days of sentence would be cut off by exercising his right to appeal. Recognizing the probability that under such circumstances the Appellate Division would grant a motion for limited remand for the purpose of resentencing for treatment, the "at any time" language was added. It permits the trial court to handle the matter directly, even though the appeal is pending. It applies to the exceptional case of the addict, but it must be made "at any time" within the fundamental 60-day period of limitation.
Such interpretation is rational and serves the interests of the addict as the rule intended. It must be understood that the convict's drug addiction (or alcoholism) will appear in any properly prepared presentence report. R. 3:21-2. If it does not; if the defendant does not himself inform the judge; if his counsel does not inform the judge and if, in fact, he is, then the court has been misled in imposing sentence and the sentence may well be illegal. If such, relief is available under R. 3:22, Cf. State v. Pohlabel, 61 N.J. Super. 242 (App. Div. 1960); State v. Barbato, 89 N.J. Super. 400, 409 (Cty. Ct. 1965). R. 3:21-10(b) is unnecessary to meet that contingency.
If the addiction was known at the time of sentence but despite that knowledge the sentencing judge opted for incarceration, the convicted person has 60 days within which to move in an attempt to convince the judge to change his *474 mind. After that, even for him, there is no further power in the trial court.
If addiction occurs after incarceration (a most unlikely eventuality), State v. Davis, supra, 68 N.J. at 85, relief is available in the Executive Branch. A prisoner may be confined in a hospital for observation (N.J.S.A. 30:4-81), transferred from a correctional facility to a hospital (N.J.S.A. 30:4-84), or "transferred to an institution more appropriate for his needs and welfare" (N.J.S.A. 30:4-91.1). Since the Department of Institutions and Agencies is authorized by law to establish any of the state or county institutions as centers for the treatment of narcotics addicts (N.J.S.A. 30:6C-4), the transfer contemplated by N.J.S.A. 30:4-91.1 is legally available. In addition, as noted above, executive clemency under such terms and conditions as the Governor sees fit to impose is available. In short, once the court has lost jurisdiction there are ample remedies available to the addict in the executive branch.
The conclusion reached herein is reinforced by a reading of the applicable 1967 rules.
Then rule R.R. 3:7-13 provided:
(a) Time. A motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction or, if an appeal is taken within the 60 days, not later than 20 days after the date of the judgment of the appellate court. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction or, if an appeal was taken within 60 days, within 35 days of issuance of the judgment of the appellate court, and not thereafter; provided, however, that an order changing a custodial sentence to permit transfer of a defendant to a narcotics treatment center may be made at any time.
This rule had to be read in conjunction with the first sentence of R.R. 1:4-1, which provided:
*475 The supervision and control of the proceedings or appeal shall be in the appellate court from the time the appeal is taken, except as otherwise provided in these rules.
From a reading of these two rules it is clear that the phrase "at any time" in R.R. 3:7-13 was intended to fit the exception contained in R.R. 1:4-1. Thus, the clause "provided however * * *" in R.R. 3:7-13 allowed the change of sentence motion to be brought even while an appeal was pending if the relief sought was a transfer to a narcotic treatment center. The reasoning is still viable under our current rules. Compare R. 3:21-10(a); (b) with R. 2:9-1(a).
In this case defendant did not move for change of sentence and transfer to a drug treatment center within 60 days of his sentence. He did timely appeal the sentence but did not then move within the 20 day period after determination of his appeal.[2] This court has no power to consider his motion. It is, accordingly, denied.
NOTES
[1] This relief is now part of R. 3:22. State v. Cerce, 46 N.J. 387, 394 (1966).
[2] Although not essential to this decision, it may well be argued that the provision permitting a motion to change a sentence to be made within 20 days after determination of an appeal does not apply to a drug addict convict. As noted, he has, by special exception, the right to apply for transfer to a drug treatment program at any time within 60 days of his sentence even if he has filed notice of appeal. The average criminal does not. If the average criminal were to wait until the 44th day after sentence to file his notice of appeal he would thereby cut off 16 days of the time within which to move to change his sentence. The deprivation would be greater if his notice of appeal were more timely filed. When the 60-day rule was originally enacted this was not so, for then the criminal had 90 days within which to notice his appeal. R.R. 1:3-1. Consequently, when the appeal time was reduced to 45 days and since the 60-day period was a substantive right, it was only fair to tack on 20 days after determination of the appeal to avoid any substantial deprivation. That reasoning does not apply to the exceptional case of the addict.