148 N.J. Super. 278 (1977)
372 A.2d 634
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STANLEY ROBINSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1977.
Decided March 17, 1977.
*279 Before Judges MATTHEWS, SEIDMAN and HORN.
Ms. Jane G. Kleinfeld, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney),
Mr. Donald W. Peppler, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. James M. Coleman, Jr., Monmouth County Prosecutor, attorney).
Mr. Robert E. Rochford, Deputy Attorney General, argued the cause for the Attorney General of New Jersey, amicus curiae (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant appeals from an order entered on March 12, 1976 denying his motion for transfer to a drug program. R. 3:21-10(b) (1).
Defendant entered a plea of guilty to three counts of forgery, N.J.S.A. 2A:109-1, and on February 7, 1975, pursuant to a plea agreement, was sentenced to three concurrent terms of five to seven years in State Prison. While his appeal was pending defendant moved pro se on April 14, *280 1975 for reduction of sentence pursuant to R. 3:21-10(a). The trial judge denied the motion because the case was then pending before this court. R. 2:9-1(a).
On August 29, 1975 defendant filed a second motion pro se to reduce his sentence under R. 3:21-10(a), which was regarded as a motion for transfer to a drug treatment program under R. 3:21-10(b) (1). On October 16, 1975, after a hearing in which defendant was represented by counsel, the motion was denied without prejudice, because defendant had not complied with the documentation requirements of subsection (c). On November 6, 1975 this court affirmed defendant's conviction.
On January 16, 1976 defendant filed a third motion pro se to reduce sentence pursuant to R. 3:21-10(a), which again was considered to be a motion for transfer under subsection (b). The motion was denied on March 12, 1976. State v. Robinson, 140 N.J. Super. 459 (Law Div. 1976).
The trial judge noted that although the present motion was barred by the 20-day limitation under R. 3:21-10(a), it was "obviously within the `at any time' language of R. 3:21-10(b), if `at any time' is to be read literally." 140 N.J. Super. at 464. However, the judge found that a literal construction would seriously impair the stability of "the whole penal structure":
* * * Trial courts would be free to tinker with validly imposed sentences at any time during the continuation of the custodial portion thereof. Finality, the public policy of an end to court concern with a particular case, would be meaningless. Motions to change a sentence could be brought years after the judgment of conviction. Theoretically, a motion would be tenable even after denial of parole release. Attempts to "judge shop" in a post-conviction sense would be fostered. Endless filing of groundless motions would be encouraged. [at 468-469]
He found that expanding the 60-day period would constitute "an attempt through the rule-making power to change substantive law  a procedure condemned in Winberry v. Salisbury," *281 and would infringe upon the executive's authority to pardon. At 469-470.
He concluded that in order to avoid the unconstitutional and undesirable results noted above, the rule should be interpreted as "appl[ying] to the exceptional case of the addict, but it [the motion] must be made `at any time' within the fundamental 60-day period of limitation." At 472-473. Since defendant had not filed his motion within 60 days of the original sentence or within 20 days of this court's affirmance of the sentence, the trial judge denied the motion as being out of time. At 475.
This appeal followed, and because of the importance of the question presented we have granted leave to the Attorney General to appear and file a brief, amicus curiae.
Defendant and the Attorney General argue that the trial judge erred in that (1) the words "at any time" in R. 3:21-10(b) were meant to apply literally; (2) such a construction does not unconstitutionally extend the jurisdiction of sentencing courts, but rather creates an appropriate procedure for the exercise of the inherent jurisdiction conferred upon the Superior Court by N.J. Const. (1947), Art. VI, § III, par. 2; (3) a literal interpretation would also not unconstitutionally infringe upon the executive's authority to pardon since, although some functions of the judiciary and the executive must overlap to a certain degree, the act of reducing a sentence is part of the judicial function of rendering a judgment and is, therefore, distinguishable from the executive's power of clemency which abridges the enforcement of the judgment, and (4) a literal reading of the rule would not lead to the instability of the whole penal structure since the procedural requirements set forth in R. 3:21-10(c) and the criteria set forth in State v. Davis, 68 N.J. 69, 86 (1975), adequately insure against that result.
Under the common law the authority of a trial judge to modify a criminal sentence terminated with the expiration of the court term in which the sentence was originally imposed. State v. Kowalczyk, 3 N.J. 231, 233 (1949). That *282 principle was first embodied in L. 1898, c. 237, § 55, which provided that a court would have the power to modify a sentence "at any time during the term in which the judgment is entered." However, due to the difficulties which resulted in implementing that rule, see State v. Kowalczyk, 3 N.J. at 233, the Legislature enacted L. 1921, c. 236, § 1, which provided for a standardized period of six months from the date of judgment within which sentence modification could be made. Subsequently, the Legislature enacted L. 1928, c. 231, which restricted the period of modification to 30 days from the date of judgment. R.S. 2:190-15.
Following the adoption of the 1947 Constitution R. 2:7-13 was promulgated extending the time limitation for modification of sentence from 30 to 60 days. N.J. Const. (1947), Art. VI, § II, par. 3. The trial judge indicated that this was a proper exercise of the judicial rule-making power only because "60 days would be well within the concept of `before the end of the term' of the common law and the maximum of six months established at one time by the Legislature." 140 N.J. Super. at 467. In 1967, R. 3:7-13(a) was amended. While the 60-day limitation period for filing was retained, it provided that an order changing a custodial sentence to permit transfer to a narcotic treatment center could be made "at any time." As part of the 1969 revision, subsections 13(a) and (b) were redesignated as R. 3:21-10 without significant changes. In 1975, however, the rule was again amended, removing the exception for drug transfer from subsection 10(a) and placing it in subsection 10(b) with two new exceptions for illness and joint application. Subsection 10(c) was also added, which now provides, in pertinent part:
A motion filed pursuant to paragraph (b) hereof shall be accompanied by supporting affidavits and such other documents and papers as set forth the basis for the relief sought. A hearing need not be conducted on a motion filed under paragraph (b) hereof unless the court, after review of the material submitted with the motion papers, concludes that a hearing is required in the interest of justice. * * *
*283 There can be no question as to whether the phrase "at any time" was meant to be interpreted literally. The report of the New Jersey Supreme Court's Committee on Criminal Practice, 98 N.J.L.J. 321 (1975), states in that regard:
* * * The Committee determined that while the judiciary has not exercised the power in the past, the courts have the inherent power, subject to any specific limitations set down by the Supreme Court, to reduce or change a sentence at any time. Accordingly, the Supreme Court can amend the court rule to extend the time limitation for reduction or change of sentence without limit. [98 N.J.L.J. at 43; emphasis supplied]
Moreover, in two recent cases it has been indicated that a literal interpretation of the language is to be employed. See e.g., State v. Tumminello, 70 N.J. 187, 192, n. 1 (1976); State v. Williams, 139 N.J. Super. 290, 301 (App. Div. 1976), certif. granted 70 N.J. 524 (1976).
In concluding that the power to modify a sentence is jurisdictional and therefore a matter of substantive law, the trial judge relied on a number of cases in the federal sector where applications for changes in sentence have been made under Fed. R. of Crim. Proc. 35 (which provides for a time limitation period of 120 days):
* * * Under the federal system once the specified time period after imposition of sentence has run, the court has lost jurisdiction over the subject matter and cannot entertain the application. United States v. Robinson, 457 F.2d 1319 (3 Cir.1972); United States v. Gorman, 431 F.2d 632 (5 Cir.1970); United States v. Ellenbogen, 390 F.2d 537 (2 Cir.1968), cert. den. 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). [140 N.J. Super. at 469].
However, these cases are inapposite because, unlike the situation in the federal sphere, both our Supreme Court and the Superior Court obtain jurisdiction directly from the Constitution. N.J. Const. (1947), Art. VI, § I, par. 1. Moreover, as noted previously, our Supreme Court has explicit constitutional authorization to make rules governing practice and procedure. N.J. Const. (1947), Art. VI, § II, par. 3. *284 Accordingly, since the Law Division has inherent jurisdiction to hear criminal matters, N.J. Const. (1947), Art. VI, § III, pars. 2 and 3, R. 3:21-10(b) merely provides an appropriate procedure for sentencing in the exercise of that jurisdiction. See Winberry v. Salisbury, 5 N.J. 240, 247-48 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
The fact that R. 3:21-10(b) may have an impact upon the substantive result makes it no less of a rule of procedure on that account. Busik v. Levine, 63 N.J. 351, 364, 367 (1973):
The constitutional grant of rule-making power as to practice and procedure is simply a grant of power; it would be a mistake to find in that grant restrictions upon judicial techniques for the exercise of that power, and a still larger mistake to suppose that the grant of that power impliedly deprives the judiciary of flexibility in the area called "substantive" law. [63 N.J. at 363]
In State v. Haines, 18 N.J. 550, 558-559 (1955), the court rejected the claim that then R.R. 3:3-10, which extended the term of a grand jury beyond that date it would ordinarily cease to function, was an attempt to make rules governing substantive matters, finding that the subject matter was clearly procedural within the rule-making power of the Supreme Court pursuant to N.J. Const. (1947), Art. VI, § II, par. 3. Cf. New Shrewsbury v. Block 115, Lot 4, 74 N.J. Super. 1, 8-9 (App. Div. 1962), finding that the rule providing for the time period within which to make a motion to reopen judgments is procedural.
Nor do we find the rule to constitute an infringement on the executive's power to pardon, since that power is clearly distinguishable from the judiciary's power to modify sentences. As was noted in United States v. Benz, 282 U.S. 304 (1930):
To render judgment is a judicial function. To carry the judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment, but does not alter it qua judgment. To *285 reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance. [282 U.S. at 311, 51 S.Ct. at 115]
See also, United States v. Ellenbogen, 390 F.2d 537, 540 (2 Cir.1968); Report of Supreme Court's Committee on Criminal Practice, 98 N.J.L.J. at 343.
We find the trial judge's concern with respect to the risk the rule presents in impairing the stability of the whole penal structure also to be unfounded. R. 3:21-10(c) requires the submission of supporting documentation and review before a trial judge need consider granting a hearing on the motion. Trial judges are required to be particularly circumspect in their consideration of such applications in this regard. State v. McKinney, 140 N.J. Super. 160 (App. Div. 1976):
Although R. 3:21-10(b) evidences a policy to facilitate rehabilitation of drug addicts in the hope that they may be restored to good health and become useful citizens in the community, State v. Davis, 68 N.J. 69, 84-85 (1975), such a policy competes with the policy to protect our citizens against all violators, whether they are repeating violators or not. The welfare of our citizens should be first and foremost. This therefore calls upon trial judges to be particularly circumspect in their consideration of such applications. As stated in State v. Davis, supra at 86: "The ultimate issue for determination is whether the purposes for which the custodial sentence * * * might reasonably be continued outweigh the interests sought to be served by transfer to a narcotics treatment center." [at 163]
In addition, a judge to whom such an application is made must consider whether there is present addiction, and whether the purposes for continued custody outweigh the interests sought to be served by transfer to a drug treatment facility. State v. Davis, above, 68 N.J. at 86; State v. Williams, above, 139 N.J. Super. at 299-300; State v. McKinney, above, 140 N.J. Super. at 163-64.
The order of the Law Division is reversed and the cause remanded for further proceedings in conformance with this opinion.