195 N.J. Super. 40 (1984)
477 A.2d 845
STATE OF NEW JERSEY, PLAINTIFF,
v.
DANIEL THOMAS DACHIELLE, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided April 23, 1984.
*42 Alan Silber, for defendant (Silber & Rubin, attorneys).
Donald S. Gardner, for plaintiff (Harold J. Ruvoldt, Jr., Hudson County Prosecutor, attorney).
STERN, J.S.C.
Defendant's post appeal motion for change or reduction of sentence requires this court to consider the interrelation of R. 3:21-10(a) and (b). The real issue is whether defendant's application is truly a motion to change "a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse" which can be made at any time. R. 3:21-10(b)(1). Since September 13, 1982 trial courts have had no jurisdiction to consider post appeal motions for change or reduction of sentence unless the application falls within an exception embodied in R. 3:21-10(b). Absent such an exception the strict time limitations control and cannot be relaxed. R. 3:21-10(a). Enlargement is strictly prohibited, R. 1:3-4(c); see, e.g. Baumann v. Marinaro, 95 N.J. 380 (1984). Prior to September 13, 1982, R. 3:21-10(a) permitted such motions to be filed within 20 days of appellate disposition and courts to reduce or change the sentence within 35 days of appellate judgment. That period was, at least in part, premised on the fact that trial courts lost jurisdiction upon the filing of a notice of appeal and since 1969 the appeal had to be filed before the motion for change or reduction of sentence. See R. 2:4-1(a). See also Pressler, Current N.J. Court Rules, comment to R. 3:21-10, at 486. In 1981 the Supreme Court adopted R. 3:21-10(d) providing jurisdiction in the trial court to entertain a timely motion for change or reduction of sentence notwithstanding the pendency of an appeal. See Pressler, op. *43 cit, supra, at 489. As a result, the following year the Criminal Practice Committee recommended that the post-appellate time limitations were no longer required. See 109 N.J.L.J. 498 (1982). R. 3:21-10(a) was amended to delete the post-appeal time limits, effective September 13, 1982. Accordingly, trial courts may change or reduce a sentence only on motion made within 60 days and decided within 75 or, if an exception embodied in R. 3:21-10(b) applies, at any time.[1]
On August 16, 1982 defendant entered a plea of guilty to possession with intent to distribute cocaine. On October 7, 1982 he was sentenced to the Hudson County Jail for a period of 364 days. A fine and mandatory penalty for the benefit of the Violent Crimes Compensation Board were also imposed. The sentence was consistent with a negotiated plea; six other charges were dismissed. The presentence report noted:
Defendant states he rarely drinks and denies any drinking problem. He acknowledges smoking marijuana (a couple of times a week) but denies any hard drug use. He denies any dependency [sic].
The court concluded that given the statutory maximum for the offense (12 years), there was no presumption against imprisonment or that it was overcome because the nature of the offense, quantity involved and need for deterrence required incarceration. See e.g., State v. Sobel, 183 N.J. Super. 473 (App.Div. 1982); N.J.S.A. 2C:1-5(b), 43-1(b). Defendant's appeal to the Appellate Division, challenging the denial of his motion to suppress and the sentence, was unsuccessful. The judgment was affirmed on December 28, 1983, and certification was thereafter denied. He was directed to surrender and commence service of his sentence on April 18, 1984.
At sentencing counsel stated that defendant supplied cocaine to others in the context of his own use. There was no other *44 reference to defendant's use of drugs or dependence upon them.
Defendant filed this motion on April 17, 1984. It was accompanied by voluminous letters and a booklet entitled "A Client Specific Planning Proposal for Daniel T. Dachielle" prepared in January, 1984 by the National Center on Institutions and Alternatives (NCIA). It contains a discussion of the following subjects:
1. "Offense Behavior" of defendant.
2. His "employment history".
3. The concerns of and regarding his family.
4. The impact of incarceration on defendant's business.
5. Developments while defendant was awaiting disposition and pending appeal.[2]
6. The "probability for success on probation".
7. "Sentencing Data".
8. "Bergen County and New Jersey Department of Corrections Population Data".
The NCIA concludes that "Mr. Dachielle is an appropriate candidate for a community based sentence for the following reasons:
" He is a first offender who has admitted his guilt;
 His work history reveals a high degree of industriousness and ability;
 He admits to substance abuse problem and has sought counselling to address it;
 Financial problems, a result of business downturn and drug abuse, contributed to his involvement in the instant offense;
 He is financially and emotionally supportive of his family;
 LaRose Florist, the small business operated by Mr. Dachielle, is in danger of failing if he were incarcerated;
 His conviction has resulted in his losing a Postal Service job and another small business;
 He has performed exemplary during the pre- and post-trial periods;
 His potential for success on probation is excellent;

*45  Research on sentencing indicates that non-custodial sanctions act as a general deterrent;
 Mr. Dachielle's community can be compensated as a victim of his offense; and
 The state and county correctional systems are severely overcrowded."
The NCIA suggests that defendant be placed on probation. Community service,[3] substance abuse counselling and urinalysis are recommended as conditions of probation, subject to strict monitoring. Counselling is recommended once a week, and urine monitoring is to occur "at a minimum of once every two weeks."
The proposal states that "Acknowledgement of Mr. Dachielle's treatment for his drug abuse extends beyond the professionals. Mr. Dachielle's family and friends attest to the problems he has experienced and believe treatment is unquestionably warranted." A letter to NCIA from Alpha Center in April of 1983 concludes that defendant's family should participate in counselling because, without same, "we can predict that his addictive behavior will continue." A memorandum from Alpha Center to NCIA in early April 1984 indicates that defendant has been attending weekly counselling sessions since acceptance into the program (in October, 1982 [sic]) and has been undergoing urine monitoring twice a week. It further states:
Psychosocially, there has been much progress and many changes. Daniel appears to be a responsible adult . .. Due to Daniel's progress it seems unlikely that he will return to his old behavioral patterns. If, however, Daniel is incarcerated, statistics show that the potential to return to old patterns is very high, especially when Daniel has made considerable progress.
The Center's coordinator therefore recommends that defendant "continue" in its program for counselling and be placed on probation. The reasons for the above recommendations are two fold, 1) Daniel is a good risk and the prognosis is good, if given probation, and 2) his friend and child will lose the support that is essential for their existence and for the child's mental *46 health. The child is the three year old son of the woman defendant plans to marry.
From the above it would appear that defendant had a substance abuse problem which may be continuing. On the other hand, the problem was perceived only after sentencing and as a result of it. The subject was developed during the pendency of the appeal but was never presented to any court until after affirmance. Moreover, while the "proposal and recommendations" consider the impact of substance abuse, they are based on a number of factors in the aggregate. The proposals and recommendations are designed to suggest the most preferable sentence as if the matter could be considered de novo. While post judgment factors may be considered, at least if the application is timely or subject to an exception, the 1982 Rule amendment is designed to achieve finality at or shortly after sentence is imposed. Unless an exception applies, the trial court's sentence must be final within 75 days of judgment subject to review for abuse of discretion. See State v. Whitaker, 79 N.J. 503 (1979). Compare State v. Hodge, 95 N.J. 369 (1984); State v. Roth, 95 N.J. 334 (1984).
The question in this case is whether the drug abuse component is sufficiently developed or in itself adequate to require a hearing or permit reconsideration of the sentence. The issue is not whether a better sentence could have been imposed; the need for finality prohibits constant or even periodic review of that subject. The Supreme Court has established the policy in that regard.
I hold that, given the recommendation for drug counselling and the request to amend sentence for that reason as well as others, there is jurisdiction to entertain the motion under R. 3:21-10(b)(1). However, even assuming present addiction and a beneficial program, other factors must be considered before the motion can be granted. "The ultimate issue for determination is whether the purposes for which the custodial sentence ... might reasonably be continued outweigh the interests *47 sought to be served by transfer to a drug treatment center." State v. Davis, 68 N.J. 69, 86 (1975). See also State v. Williams, 139 N.J. Super. 290, 298-300 (App.Div. 1976) aff.o.b. 75 N.J. 1 (1977); State v. McKinney, 140 N.J. Super. 160, 163-164 (App.Div. 1976). While Title 24 offenses are not classified under the Code of Criminal Justice and therefore not subject to all of its classification and sentencing provisions, subtitle 3 of the Code does generally apply. N.J.S.A. 2C:1-4(c), 1-5(b), 43-1(b); State v. Sobel, supra. The Code sentencing provisions are more "offense" oriented than under prior law, and while there may be no "presumption" of imprisonment in this case, despite the statutory maximum for the offense because there is no "crime of the first or second degree", certain aggravating and mitigating factors must be considered. See N.J.S.A. 2C:44-1; State v. Hodge, supra; State v. Roth, supra.
As in Williams and McKinney, there is in this case some suggestion, but no meaningful showing or description, of present or continuing addiction and certainly insufficient justification developed as to why a short period of incarceration (without access to drugs) of an estimated 100 days, with credits, before parole eligibility would destroy the progress deemed so significant over the last 1 1/2 years. Moreover, there is no showing that adequate counselling is not available within the Hudson County Jail over the next 3 to 4 months before expected parole eligibility.[4] Furthermore, the record continues to reflect the facts developed at sentencing in *48 October, 1982. Given the totality of circumstances surrounding the offense, the need for deterrence is significant. See N.J.S.A. 2C:44-1(a)(9). Thus, the material presented does not suggest a need for further hearing. State v. McKinney, supra.[5]
The material before the court is impressive. If presented at sentencing, it may well have had more impact. Within 75 days thereafter, it might have sufficed for reduction. Presented after affirmance and because of it, considerations are quite different.
My decision does not put form over substance. It recognizes the need for finality as decided by the Supreme Court in September, 1982. Approximately one month later defendant was sentenced. Much of what was presented on this application, indicates that the sentence was appropriate and salutary. Defendant has made progress to his benefit and the benefit of others. But that progress, given defendant's changed attitude in light of the sentence, cannot be the basis for its undoing. The positive showing, as indicated in the "proposal", relates to subjects in addition to, and quite independent of, drug counselling and the need for further drug treatment.
The defendant's sentence apparently has had deterrent impact and value; hopefully it will continue to do so. The motion is denied.
NOTES
[1] By virtue of R. 3:21-10(d), the motion may be heard notwithstanding an appeal because change or reduction could moot the appeal. With respect to the Supreme Court's power to adopt R. 3:21-10(b), permitting motions for change or reduction of sentence at any time, see State v. Robinson, 148 N.J. Super. 278 (App.Div. 1977).
[2] In this section it is indicated that twenty days after judgment was entered, defendant "voluntarily entered professional substance abuse therapy with the Alpha Center ..." In the report and by separate memoranda, defendant's therapist has reported "a significant improvement in his attitude on drug use and his motivation to live more responsibly."
[3] Letters presented to the court indicate that defendant has performed valuable and significant work for the Community Food Bank since sentence was imposed.
[4] Under the Code of Criminal Justice, parole eligibility is a factor to consider in imposing sentence. N.J.S.A. 2C:43-2(e), 44-1(c)(2). As to parole eligibility, see State v. Heisler, 192 N.J. Super. 586, 590-591 (App.Div. 1984). With respect to the sentence imposed in this case it should be noted that the maximum period of imprisonment which could be imposed as a condition of probation at the time of offense and sentencing was 180 days, although there was no parole eligibility on the custodial aspect of such a sentence at that time. The maximum custodial period as a condition of probation and parole eligibility thereon were embodied in amendments to the Code of Criminal Justice effective April 5, 1983. See N.J.S.A. 2C:43-2(b), 45-1(c).
[5] This decision is based on the papers presented on the application which do not express anything with respect to the impact of incarceration of about four months and expresses "present addiction" only in conclusionary and incidental terms. As a motion under R. 3:21-10(b)(1) may be made "at any time" this motion is denied without prejudice.